**2018 UT App 160**

# THE UTAH COURT OF APPEALS

BENJAMIN ARRIAGA,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
No. 20150911-CA
Filed August 23, 2018

Third District Court, West Jordan Department
The Honorable Charlene Barlow
No. 120404690

Emily Adams, Attorney for Appellant[1]

Sean D. Reyes and Mark C. Field, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGE MICHELE M. CHRISTIANSEN FORSTER concurred. JUDGE JILL
M. POHLMAN concurred in part and concurred in the result in
part, with opinion.

1. Postconviction proceedings are civil in nature, and defendants who bring such petitions do not have the right to appointed counsel. *See Hutchings v. State*, 2003 UT 52, ¶ 20, 84 P.3d 1150. But when Appellant filed his postconviction petition pro se, he requested that counsel be appointed, and the district court granted this request. If a petition is not summarily dismissed, the court may appoint counsel "on a pro bono basis" to represent the defendant. *See* Utah Code Ann. § 78B-9-109(1) (LexisNexis 2012). We appreciate the district court's decision to appoint counsel in this case because it has helped us better understand Appellant's claims and arguments. And we appreciate the willingness of appellate counsel, as well as that of James D. Gilson, who represented Appellant below, to accept these appointments.

ORME, Judge:

¶1 Appellant Benjamin Arriaga (Defendant) appeals the district court's order granting the State's summary judgment motion and denying his petition for postconviction relief. Defendant pled guilty to murder, a first degree felony, and was sentenced to prison in 2011. He now challenges his guilty plea on the grounds that it was not knowing or voluntary and that he received ineffective assistance of counsel. We affirm the summary judgment denying his petition for postconviction relief.

BACKGROUND

¶2 Defendant admitted to police that, on April 4, 2010, he shot and killed the man (Victim) who was having an affair with his wife. He explained that, having discovered the affair, he angrily confronted Victim in a park. Defendant then pointed a gun at Victim, intending to scare him into admitting to the affair. When Victim admitted to sleeping with Defendant's wife, Defendant replied that "this kind of thing is not forgiven." Defendant said that Victim then lunged for the gun, and a struggle ensued. Defendant told police that the gun discharged several times in the course of the struggle, and Victim was shot once in the abdomen, once in the leg, twice in the back, and once in the back of the head.

¶3 The State charged Defendant with murder, a first degree felony, *see* Utah Code Ann. § 76-5-203(3)(a) (LexisNexis 2017); the purchase, transfer, possession, or use of a firearm by a restricted person, a second degree felony, *see id*. § 76-10-503(2)(a); and obstruction of justice, a second degree felony, *see id*. § 76-8-

306(3)(a).[2] Defendant entered into a plea bargain, agreeing to plead guilty to murder if the other charges were dismissed. At the plea hearing, Defendant acknowledged he knew that by pleading guilty he was waiving his constitutional rights, including the right to the presumption of innocence and the right to a jury trial.[3] Defendant further acknowledged that he understood everything that his counsel had discussed with him, including the plea affidavit. The court then inquired whether Defendant had any questions about the plea affidavit, to which Defendant replied that he did not.

¶4     After trial counsel described the factual basis for Defendant's murder charge, Defendant made statements implying that he acted in self-defense:

> [TRIAL COUNSEL]: Your Honor, on April 4th 2010 in Salt Lake County [Defendant] confronted a man who had been sleeping with his wife. An argument and subsequent fight took place at which time he pulled out a firearm and he shot the man killing him.
>
> THE COURT: Is that what happened, [Defendant]?

---

2. Because the statutory provisions in effect at the relevant time do not differ in any material way from those now in effect, we cite the current version of the Utah Code for convenience.

3. Defendant's primary language at the time of the plea hearing was Spanish. To ensure Defendant understood the court proceedings, interpreters were present and the plea affidavit was written in both English and Spanish. However, an interpreter was not present during out-of-court discussions between Defendant and his trial counsel.

> THE DEFENDANT: I defended myself. It was not my intention. I never thought about hurting him.
>
> . . . .
>
> [TRIAL COUNSEL]: Your Honor, we had— discussed the imperfect self-defense concept and that he did pull out a gun to get the man to confess to sleeping with his wife. And that the man charged at him but he was unarmed. So that is why he used a gun.
>
> THE COURT: I will find that that is a sufficient factual basis.
>
> THE DEFENDANT: He was drugged and drunk and I didn't know if he had a weapon, a knife and that's why I—

After Defendant made these statements, the district court clarified with Defendant that he intentionally killed Victim by asking Defendant whether he knew that by pulling the trigger he would cause Victim's death. Defendant acknowledged that he did. After entering his guilty plea, Defendant asked to be sentenced immediately and waived the right to withdraw his plea.

¶5 After a few months in prison, Defendant filed a petition under the Post-Conviction Remedies Act, s*ee* Utah Code Ann. §§ 78B-9-101 to -405 (LexisNexis 2012), arguing that his plea was involuntary because his attorney explained his plea to him without the assistance of an interpreter. He also raised an ineffective-assistance-of-counsel claim on that same basis, specifically arguing that counsel's failure to use an interpreter resulted in Defendant not knowing that he had a valid self-defense argument and could have taken his case to trial. The State filed a response to his petition, asserting that Defendant

had not carried his burden of establishing by a preponderance of the evidence that his trial counsel's performance was deficient and prejudicial. The State also contended that the nature of Defendant's plea was both voluntary and knowing because any misunderstandings regarding his plea that arose out of his communications with his attorney were cured by his plea affidavit and plea colloquy, both of which had been translated into Spanish.

¶6     An evidentiary hearing was held, but suspended, and in the meantime, the State moved for summary judgment. Granting the State's motion, the district court concluded that Defendant had failed to show that trial counsel's performance was deficient and that all constitutional prerequisites for a valid guilty plea had been satisfied in Defendant's case. Defendant appeals.

ISSUES AND STANDARDS OF REVIEW

¶7     Defendant contends that the district court erred in granting the State's motion for summary judgment for two reasons. First, he argues that his plea was not knowing or voluntary, asserting he did not understand the essential elements of his murder charge at the time of his plea. Second, he argues that his trial counsel's performance was deficient for failure to use an interpreter during their out-of-court discussions.

¶8     "We review an appeal from an order dismissing or denying a petition for postconviction relief for correctness without deference to the lower court's conclusions of law." *Gardner v. State*, 2010 UT 46, ¶ 55, 234 P.3d 1115 (citation and internal quotation marks omitted). "Similarly, we review a grant of summary judgment for correctness, granting no deference to the lower court." *Ross v. State*, 2012 UT 93, ¶ 18, 293 P.3d 345 (brackets, citation, and internal quotation marks omitted).

ANALYSIS

I. Defendant's Plea

¶9 Defendant contends that his self-defense statements and the circumstances surrounding his guilty plea demonstrate that he did not understand the elements of the murder charge against him, which rendered his plea unknowing and involuntary.[4] For a guilty plea to be valid under the Due Process Clause of the Fourteenth Amendment, it must be made "voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (citation and internal quotation marks omitted). For that reason, "[i]t is the responsibility of the district court to ensure that defendants enter pleas knowingly and voluntarily." *State v. Candland*, 2013 UT 55, ¶ 14, 309 P.3d 230. And rule 11 of the Utah Rules of Criminal Procedure provides courts with a "roadmap for ensuring that defendants receive adequate notice of their rights and for examining defendants' subjective understanding and intent." *Id.*

¶10 Rule 11 states that a district court may not accept a guilty plea until it has found that the defendant understands his constitutional rights, including his right to the presumption of innocence and his right to a jury trial. Utah R. Crim. P. 11(e)(3). Additionally, the court must ensure that the defendant knows

---

4. The State argues that Defendant's involuntary plea claim is procedurally barred as Defendant did not raise it in a motion to withdraw his plea before being sentenced. *See* Utah Code Ann. § 78B-9-106(1)(c) (LexisNexis Supp. 2017) (stating that a person is ineligible for postconviction relief on any ground that "could have been but was not raised at trial or on appeal"). Defendant's argument is unsuccessful in this appeal, so we do not dwell on whether it is also procedurally barred.

"the nature and elements of the offense to which the plea is entered." *Id.* R. 11(e)(4)(A). It is not enough for the district court to give notice to the defendant; the court must also find that "the defendant *actually* understood the charges, the constitutional rights, and the likely consequences of the plea and voluntarily chose to plead guilty." *Candland*, 2013 UT 55, ¶ 16 (emphasis added).

¶11 Defendant asserts that he lacked a meaningful understanding of the murder charge, and he points to his self-defense statements during the plea colloquy to demonstrate this lack of understanding. But the transcript of the plea colloquy shows that any misunderstanding Defendant may have had was inconsequential given his acknowledgements during the plea colloquy that he understood the contents of his plea affidavit and that he understood everything counsel had explained to him.

¶12 Within the plea affidavit, prepared in both English and Spanish, Defendant stated that the elements of the crime for which he was pleading guilty were that "[Defendant] did knowingly and intentionally cause[] the death of another." He also stated that the facts providing a basis for these elements were that on April 4, 2010, he "confront[ed] a man who slept [with his] wife" and "fought with the man and subsequently shot him, killing him." Based on Defendant's assurances in the plea colloquy that he had reviewed and understood his plea affidavit, there is no doubt that Defendant understood the elements of the murder charge at the time of his guilty plea.

¶13 Defendant also argues that his self-defense claims "negated an essential element of the murder charge and provided objective evidence that he did not understand the proceedings." When a defendant puts an affirmative defense at issue during trial, "the State carries the burden of proving beyond a reasonable doubt each element of an offense, including

the absence of an affirmative defense[.]" *State v. Low*, 2008 UT 58, ¶ 45, 192 P.3d 867 (citation and internal quotation marks omitted). Accordingly, a "necessary element of a murder conviction is the absence of affirmative defenses." *Id.* When Defendant made his statements indicating that he acted in self-defense, his trial counsel explained to the court that the concept of imperfect self-defense had been explained to Defendant, specifically in relation to the facts of his case, including counsel's assessment that it was not a viable defense.[5] And "[w]here a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty." *Bradshaw v. Stumpf*, 545

---

5. Imperfect self-defense "is an affirmative defense to a charge of murder" in cases where "the defendant caused the death of another . . . under a reasonable belief that the circumstances provided a legal justification or excuse for the conduct although the conduct was not legally justifiable or excusable under the existing circumstances." Utah Code Ann. § 76-5-203(4)(a) (LexisNexis 2017). And so the "difference between perfect self-defense and imperfect self-defense is the determination of whether the defendant's conduct was, in fact, legally justifiable or excusable under the existing circumstances." *State v. Low*, 2008 UT 58, ¶ 32, 192 P.3d 867 (citation and internal quotation marks omitted). *Cf.* Utah Code Ann. § 76-2-402(1)(b) (LexisNexis 2017) (providing that, in cases of perfect self-defense, lethal force is justified "only if the person reasonably believes that force is necessary to prevent death or serious bodily injury . . . as a result of another person's imminent use of unlawful force"). But the use of lethal force is not justified when the defendant "initially provokes the use of force against the person with the intent to use force as an excuse to inflict bodily harm upon the assailant" or when the defendant "was the aggressor" and did not withdraw from the encounter. *Id.* § 76-2-402(2)(a)(i), (iii).

U.S. 175, 183 (2005). Trial counsel assured the district court that the concept of imperfect self-defense had been explained to Defendant, and where Defendant had previously told the court he understood everything counsel had explained to him, it was reasonable for the court to conclude that Defendant understood how the imperfect self-defense theory applied in his case. Furthermore, with the benefit of an interpreter during the plea colloquy, Defendant made no objection to trial counsel's assurance that Defendant understood.

¶14    We do, however, recognize that Defendant's statements suggesting possible self-defense did raise a question of whether he intended to kill Victim because he stated, "It was not my intention. I never thought about hurting him." It was therefore necessary for the court to address the conflict between this statement and his plea affidavit. *See State v. Maguire*, 830 P.2d 216, 217 (Utah 1991) ("'Any omissions or ambiguities in the affidavit must be clarified during the plea hearing, as must any uncertainties raised in the course of the plea colloquy.'") (quoting *State v. Smith*, 812 P.2d 470, 477 (Utah Ct. App. 1991)). And the court did address this conflict by asking Defendant whether he knew that his actions, specifically pulling the trigger of the gun, would cause Victim's death. Defendant acknowledged that he did.

¶15    Defendant further contends that he did not understand his guilty plea because he "speaks Spanish, has a fifth-grade education, and did not speak English except a few random words at the time he pleaded guilty," while "[h]is trial counsel did not speak Spanish." He additionally claims not to have read the plea affidavit before signing it. But these claims contradict Defendant's statements to the district court during his plea hearing. Defendant is bound by his statements because "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any

subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). "Accordingly, the truth and accuracy of a defendant's statements during the [plea colloquy] should be regarded as conclusive in the absence of a believable, valid reason justifying a departure from the apparent truth of his [plea colloquy] statements." *United States v. Weeks*, 653 F.3d 1188, 1205 (10th Cir. 2011) (citation and internal quotation marks omitted). Here, there is no valid reason to doubt the truthfulness of Defendant's statements to the district court during his plea colloquy because an interpreter was present and Defendant professed to understand everything discussed with counsel and the contents of his plea affidavit. Because there is nothing in the record that suggests Defendant lacked an understanding of the elements of the murder charge against him or anything but his own later assertions that he did not actually understand the essence of imperfect self-defense, the district court did not err in concluding on summary judgment that his plea was voluntarily and knowingly made.

## II. Assistance of Counsel

¶16      Defendant contends that his trial counsel's performance was deficient because no interpreter was present during their out-of-court discussions prior to his plea hearing. To prevail on an ineffective assistance of counsel claim, a defendant must show that (1) "counsel's performance was deficient in that it 'fell below an objective standard of reasonableness'" and (2) "counsel's performance was prejudicial in that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Menzies v. Galetka*, 2006 UT 81, ¶ 87, 150 P.3d 480 (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)).

¶17      Defendant must first show that "counsel's representation fell below an objective standard of reasonableness." *Strickland*,

466 U.S. at 688. Defendant asserts that the language barrier with his trial counsel prevented him from becoming aware of his right to the presumption of innocence and his right to plead not guilty. He claims that his counsel's conduct fell below the standard of reasonableness when he did not secure an interpreter to better communicate these rights to Defendant. Nevertheless, any "[j]udicial scrutiny of counsel's performance must be highly deferential" and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. And whether counsel's conduct was reasonable "may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

¶18    Here, Defendant claims that he only knew a few words of English at the time of his plea hearing and that trial counsel did not speak Spanish. But with an interpreter present, Defendant never advised the court that there was any issue in communicating with his counsel. He specifically acknowledged in the plea colloquy, during which an interpreter was present, that he understood everything counsel had explained to him. Had there been an insurmountable language barrier, Defendant had the opportunity to raise this issue with the court in the plea hearing on several occasions when asked by the court whether he understood everything his counsel had discussed with him and whether he had questions about the plea affidavit. We therefore are not persuaded that trial counsel acted unreasonably in failing to secure an interpreter for his out-of-court consultations with Defendant.

¶19    We do appreciate the importance of interpreters, but any suggestion that we should err on the side of requiring an interpreter in this case is dispelled by the other basis on which Defendant's ineffective assistance claim can be rejected. Defendant does nothing to establish that counsel's failure to secure an interpreter was prejudicial. To contest his guilty plea

on the ground of ineffective assistance of counsel, Defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial *and* that such a decision would have been rational under the circumstances." *Rippey v. State*, 2014 UT App 240, ¶ 14, 337 P.3d 1071 (emphasis in original) (citation and internal quotation marks omitted). Defendant must do more than allege that he would not have pled guilty had his counsel secured an interpreter for their out-of-court discussions. Rather, we "look to the factual circumstances surrounding the plea" and whether it would have been rational for Defendant to reject the plea and insist on a trial. *Id.* (citation and internal quotation marks omitted).

¶20 At the time of the State's plea offer, Defendant had already confessed to killing Victim, and a motion to suppress that confession had been denied by the district court. Defendant asserts that, had trial counsel better explained the elements of murder to Defendant, he would have known he had a valid claim for imperfect self-defense based on his statement to officers that Victim lunged at him during the confrontation. But the imperfect-self-defense theory is substantially undermined by the fact that, in what Defendant characterized as a tussle over the gun that he brought only to scare Victim, Victim was shot five times, including twice in the back and once in the back of the head. Based on these circumstances, there is nothing to suggest that it would have been rational for Defendant to reject the State's offer to dismiss the other two felony charges against him in exchange for his guilty plea to the murder charge.

CONCLUSION

¶21 Defendant's statements and actions do not demonstrate that his guilty plea was unknowing or involuntary or that his counsel performed deficiently by not having an interpreter

present during their out-of-court discussions. Additionally, he fails to establish any prejudice as a result of this decision by counsel. We thus presume Defendant's counsel rendered constitutionally adequate assistance, exercising reasonable professional judgment, and the district court did not err in granting summary judgment to the State. Accordingly, we affirm.

—————

POHLMAN, Judge (concurring in part and concurring in the result in part):

¶22    I concur with the lead opinion except as to Part I, in which I concur in the result. I am troubled by my colleagues' conclusion that the district court adequately remedied the conflict between the statements in Defendant's plea affidavit and his self-defense assertions during the plea colloquy. *See supra* ¶ 14. Defendant interjected statements that created a conflict about the nature of his plea. In my view, it is questionable whether the court's attempts to resolve the conflict were successful.

¶23    The court apparently recognized the significance of Defendant's initial assertion that he "defended [him]self," and it attempted to resolve the apparent conflict between his plea affidavit and that assertion by asking defense counsel if it changed the plea. But although counsel explained that he had "discussed the imperfect self-defense concept" with Defendant, he did not explain what Defendant understood. Thus, counsel's representation did not resolve the conflict or demonstrate that Defendant understood he was waiving any potential defenses in pleading guilty to first degree murder.

¶24    Defendant further added to the confusion when he interjected that he shot Victim because "[Victim] was drugged and drunk and [Defendant] didn't know if [Victim] had a

weapon." The court again tried to resolve the conflict, this time asking Defendant whether he knew that his actions would cause Victim's death. Defendant acknowledged that he knew "by pulling the trigger" of the gun he could cause Victim's death, but that acknowledgement did not speak to the conflict created by his assertions: whether he understood that in pleading guilty to first degree murder he was conceding that the concept of imperfect self-defense did not apply.

¶25    Thus, I question whether the ambiguities introduced in the plea hearing regarding the nature of Defendant's plea were resolved by the court's colloquy. *See State v. Lehi*, 2003 UT App 212, ¶ 16, 73 P.3d 985 (recognizing the district court's obligation to clarify discrepancies during the plea colloquy). However, I concur in the result and would affirm the district court's decision based on Defendant's failure to demonstrate prejudice.

¶26    Under the Post-Conviction Remedies Act, "[t]he court may not grant relief from a conviction or sentence unless the petitioner establishes that there would be a reasonable likelihood of a more favorable outcome in light of the facts proved in the post-conviction proceeding, viewed with the evidence and facts introduced at trial or during sentencing." Utah Code Ann. § 78B-9-104(2) (LexisNexis 2012); *see also Gardner v. State*, 2010 UT 46, ¶ 62, 234 P.3d 1115. A petitioner must satisfy the same standard to obtain relief based on a claim of ineffective assistance of counsel. *Landry v. State*, 2016 UT App 164, ¶ 23 n.6, 380 P.3d 25.

¶27    On appeal, Defendant relies on the same arguments to satisfy this standard for his claims based on the voluntariness of his plea and his claims based on ineffective assistance of counsel. In addressing Defendant's challenge based on ineffective assistance of counsel, we conclude that he failed to demonstrate that, absent the claimed errors, he would have rejected the State's plea offer and that it would have been rational under the

circumstances to do so. *See supra* ¶¶ 19–20; *see also Rippey v. State*, 2014 UT App 240, ¶ 14, 337 P.3d 1071 (requiring a petitioner challenging the voluntariness of his plea based on ineffective assistance of counsel to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial *and* that such a decision would have been rational under the circumstances" (quotation simplified)). I believe this deficiency is equally fatal to Defendant's challenge based on the voluntary nature of his plea. For the same reasons he fails to demonstrate prejudice arising out of his ineffective assistance of counsel claim, he has failed to demonstrate prejudice arising out of his claim based on the voluntariness of his plea. *See supra* ¶¶ 19–20. On this basis, I would affirm the district court's decision granting summary judgment to the State on Defendant's postconviction challenge to the voluntariness of his plea.

———————