*This opinion is subject to revision before final*
*publication in the Pacific Reporter*

**2020 UT 37**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

BENJAMIN ARRIAGA,
*Petitioner,*

*v.*

STATE OF UTAH,
*Respondent.*

No. 20180870
Heard September 20, 2019
Filed June 23, 2020

On Certiorari to the Utah Court of Appeals

Third District, West Jordan
The Honorable Charlene Barlow
No. 120404690

Attorneys:

Emily Adams, Bountiful, for petitioner

Sean D. Reyes, Att'y Gen., Mark C. Field, Asst. Solic. Gen.,
Salt Lake City, for respondent

CHIEF JUSTICE DURRANT authored the opinion of the Court, in
which ASSOCIATE CHIEF JUSTICE LEE, JUSTICE HIMONAS,
JUSTICE PEARCE, and JUSTICE PETERSEN joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

**Introduction**

¶1 Petitioner Benjamin Arriaga pled guilty to first-degree
murder. After sentencing, he filed a pro se petition under the
Post-Conviction Remedies Act (PCRA),[1] arguing that his guilty plea

---

[1] UTAH CODE §§ 78B-9-101 to -503.

was unknowing and involuntary and that he received ineffective assistance of counsel. The post-conviction court granted the State's motion for summary judgment, and the court of appeals affirmed. We granted petitioner's writ of certiorari. Because Mr. Arriaga has failed to identify a material dispute sufficient to rebut the State's showing that he was not prejudiced by his guilty plea or the State's showing that his trial counsel's performance was not deficient, we affirm.

## Background

¶2   In 2010, Mr. Arriaga shot and killed Mr. Benacio Herrera. Mr. Arriaga confronted Mr. Herrera over an affair Mr. Herrera allegedly had with Mr. Arriaga's wife. During the confrontation, the two men exchanged punches, and Mr. Arriaga pulled out a gun. Mr. Arriaga told police officers that he shot Mr. Herrera only after Mr. Herrera lunged for the gun. Mr. Herrera was shot five times—once in the leg, once in the abdomen, twice in the back, and once in the back of the head. Although Mr. Arriaga admitted that he killed Mr. Herrera and that he was angry with Mr. Herrera over the alleged affair, he told police that the killing was accidental and that he never intended to kill Mr. Herrera.

¶3   The State brought three charges against Mr. Arriaga: first-degree murder, possession or use of a firearm by a restricted person,[2] and obstruction of justice. Mr. Arriaga indicated, through trial counsel, that he would agree to plead guilty to first-degree murder in exchange for the dismissal of the other two charges.

¶4   Before the plea hearing, trial counsel prepared and reviewed a Plea Affidavit with Mr. Arriaga. The elements of murder were written in the Plea Affidavit as follows: "Def. did knowingly and intentionally cause[] the death of another." The following facts were listed as the sufficient basis for the district court to accept Mr. Arriaga's plea: "On 4/4/10, in SL Co, I, while confronting a man who slept w/ my wife, fought with the man and subsequently shot him, killing him." Mr. Arriaga's native language is Spanish, and while trial counsel did not provide an interpreter in client meetings, the Plea Affidavit was written in both English and Spanish.

---

[2] Mr. Arriaga was prohibited from possessing or using a firearm after having previously pled guilty to three third-degree felonies: possession of a controlled substance, and two counts of endangerment of a child.

¶5    In the plea hearing, Mr. Arriaga stated he was satisfied with his trial counsel and understood everything trial counsel discussed with him. When discussing the factual basis for his plea, however, he made two statements to the district court suggesting he may have acted in self-defense when he shot Mr. Herrera. The transcript of the hearing contains the following exchange:

> The Court: Okay. Counsel, can you give me a factual basis?
>
> [Trial Counsel]: Your Honor, on April 4th[,] 2010 in Salt Lake County [Mr. Arriaga] confronted a man who had been sleeping with his wife. An argument and subsequent fight took place at which time he pulled out a firearm and he shot the man killing him.
>
> The Court: Is that what happened, [Mr. Arriaga]?
>
> [Mr. Arriaga]: I defended myself. It was not my intention. I never thought about hurting him.
>
> The Court: Okay. Does that change the plea at all, counsel?
>
> [Trial Counsel]: Your honor, we had – we had discussed the imperfect self-defense concept and that he did pull out a gun to get the man to confess to his sleeping with his wife. And that the man charged at him but he was unarmed. So that is why he used a gun.
>
> The Court: I will find that that is a sufficient factual basis.
>
> [Mr. Arriaga]: He was drugged and drunk and I didn't know if he had a weapon, a knife and that's why I . . . .

After this exchange, the district court asked Mr. Arriaga if he "understood that by pulling the trigger [he] knew that [he] could cause the death of [the victim]," to which Mr. Arriaga responded, "Yes."

¶6    The court determined this was a sufficient factual basis to accept Mr. Arriaga's plea. Through trial counsel, Mr. Arriaga requested that the court sentence him immediately. The court granted this request and sentenced him to fifteen years to life in prison. He did not appeal.

¶7    Mr. Arriaga timely filed a petition for post-conviction relief in which he raised two arguments: first, his plea was unknowing and involuntary because he did not understand that the absence of

imperfect self-defense was an element of murder; and second, he received ineffective assistance of counsel because of a language barrier with trial counsel. The post-conviction court held an evidentiary hearing on Mr. Arriaga's claims, but suspended the hearing to allow him time to file a second amended petition. After Mr. Arriaga filed his second amended petition, the State filed a motion for summary judgment, which the post-conviction court granted, denying Mr. Arriaga's petition for post-conviction relief. The court of appeals upheld the post-conviction court's decision.[3]

¶8   We granted Mr. Arriaga's petition for certiorari. We have jurisdiction under Utah Code section 78A-3-102(3)(a).

**Standard of Review**

¶9   Mr. Arriaga asks us to determine whether the court of appeals erred in affirming the post-conviction court's denial on summary judgment of the two claims he raised in his petition for post-conviction relief.

¶10 "On certiorari, we review the decision of the court of appeals . . . for correctness and give its conclusions of law no deference."[4] "We affirm a grant of summary judgment when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[5] On review, "facts and all reasonable inferences drawn therefrom [must be viewed] in the light most favorable to the nonmoving party."[6]

**Analysis**

¶11 Mr. Arriaga raises two grounds for relief in his PCRA petition. First, he claims that his "conviction was obtained . . . in violation of the United States Constitution" because his plea was unknowingly and involuntarily made.[7] Second, he claims that he

---

[3] *Arriaga v. State*, 2018 UT App 160, ¶ 21, 436 P.3d 222.

[4] *Bluemel v. State*, 2007 UT 90, ¶ 9, 173 P.3d 842 (citation omitted) (internal quotation marks omitted).

[5] *Ross v. State*, 2012 UT 93, ¶ 18, 293 P.3d 345 (citation omitted) (internal quotation marks omitted).

[6] *Id.* (citation omitted) (internal quotation marks omitted).

[7] *See* UTAH CODE § 78B-9-104(1)(a).

received ineffective assistance of counsel because trial counsel did not provide an interpreter when he met with Mr. Arriaga prior to the plea hearing.[8]

¶12  Mr. Arriaga bears the burden of pleading and proving that he is entitled to relief under the PCRA.[9] But in cases such as this one where the State responds to a PCRA petition by filing a motion for summary judgment, it is the State that must show it "is entitled to judgment and there is no genuine issue of material fact that would preclude summary judgment in [its] favor."[10] "[T]he moving party always bears the burden of establishing the lack of a genuine issue of material fact, but the burden of production of evidence may fall on the nonmoving party"—in this case Mr. Arriaga—"[]if that party will bear the burden of production at trial[]."[11] "[W]here the burden of production falls on the nonmoving party, . . . the moving party may carry its burden of persuasion without putting on any evidence of its own—by showing that the nonmoving party has no evidence to support an essential element of a claim."[12]

¶13 Under this standard, we affirm the court of appeals' decision to uphold the post-conviction court's grant of the State's motion for summary judgment on both of Mr. Arriaga's claims. Although we conclude that Mr. Arriaga has produced sufficient evidence in support of his claim that his plea was unknowingly and involuntarily made, we ultimately affirm the court of appeals because he has not produced evidence that he was prejudiced as a result.

¶14 And on Mr. Arriaga's second claim—that he received ineffective assistance of counsel—we conclude that there is no genuine issue of material fact with respect to whether his trial counsel's performance was constitutionally deficient. Accordingly, we affirm the court of appeals on Mr. Arriaga's second claim.

---

[8] *See id.* § 78B-9-104(1)(d).

[9] *See Menzies v. State*, 2014 UT 40, ¶ 81, 344 P.3d 581.

[10] *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Jones & Trevor Mktg., Inc. v. Lowry*, 2012 UT 39, ¶ 29, 284 P.3d 630).

[11] *Salo v. Tyler*, 2018 UT 7, ¶ 2, 417 P.3d 581.

[12] *Id.*

## I. Mr. Arriaga's Claims Were Properly Preserved

¶15 The State asserts Mr. Arriaga failed to preserve the theory that his misunderstanding of the implications of imperfect self-defense rendered his plea invalid. "[I]n order to preserve an issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue."[13] Appellate courts consider three factors when determining whether an issue was properly raised before the district court: "(1) the issue must be raised in a timely fashion; (2) the issue must be specifically raised; and (3) a party must introduce supporting evidence or relevant legal authority."[14]

¶16 In his petition,[15] Mr. Arriaga alleged his "conviction was obtained by a plea of guilty that was . . . not made voluntarily with [an] understanding of the nature of the charge and the consequences of the plea." He stated that his trial counsel "failed to advise [him] to go to trial" where he could have presented his "self-defense" theory and challenged the State's "lack of proof beyond a reasonable doubt to all elements of the murder charge." And he attached the transcript of the plea hearing, which provided evidence he was confused about the implications of self-defense to his guilty plea. We conclude that Mr. Arriaga preserved this claim by raising it in a timely manner with supporting evidence, and we can address it on the merits.

## II. Mr. Arriaga Has Not Produced Evidence to Support His Claim That He Was Prejudiced by His Unknowing and Involuntary Plea

¶17 Mr. Arriaga argues the court of appeals erred in affirming the post-conviction court's determination that his guilty plea was knowingly and voluntarily made. He claims he did not understand that the absence of imperfect self-defense was an essential element of murder. He further argues he was prejudiced by this misunderstanding because, had he understood the significance of a potential imperfect self-defense claim, he would not have pled guilty, but would have insisted on going to trial.

---

[13] *Brookside Mobile Home Park, Ltd. v. Peebles*, 2002 UT 48, ¶ 14, 48 P.3d 968.

[14] *Id.* (citation omitted) (internal quotation marks omitted).

[15] The post-conviction court suspended an evidentiary hearing to allow Mr. Arriaga to file a second amended petition.

¶18 We conclude that there is a genuine dispute of material fact as to whether, at the time he entered his plea, Mr. Arriaga understood the implication an assertion of imperfect self-defense may have had on the charges against him. Accordingly, there is a genuine issue of material fact as to whether his plea was knowing and voluntary. But we further conclude that Mr. Arriaga has failed to produce evidence showing that he was prejudiced. As a result, we affirm the court of appeals' affirmance of summary judgment.

*A. There is a genuine issue of material fact as to whether Mr. Arriaga's plea was knowing and voluntary*

¶19 Mr. Arriaga has produced evidence sufficient to avoid summary judgment on the issue of whether his guilty plea was unknowing and involuntary because he did not understand the essential elements of murder. A guilty plea is constitutionally valid only if it is made "voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences."[16] A plea is knowing and voluntary when the accused demonstrates an understanding of the nature of the charge, such that their plea can "stand as an intelligent admission of guilt."[17] In order to have a complete understanding of a charge, the accused must have "an understanding of the law in relation to the facts."[18]

¶20 The Utah Rules of Criminal Procedure provide further guidance for district courts in determining whether the accused has a complete understanding of the nature of the charge.[19] Rule 11 provides that a defendant must "understand[] the nature and elements of the offense to which the plea is entered, that upon trial the prosecution would have the burden of proving each of those elements beyond a reasonable doubt, and that the plea is an admission of all of those elements."[20] If a defendant is unaware of an element the State has to prove, "a defendant cannot intelligently weigh the risks and benefits of going to trial versus pleading

---

[16] *State v. Alexander*, 2012 UT 27, ¶ 16, 279 P.3d 371 (citation omitted) (internal quotation marks omitted).

[17] *Id.* (citation omitted) (internal quotation marks omitted).

[18] *Id.* ¶ 29 (citation omitted) (internal quotation marks omitted).

[19] *Id.* ¶ 17.

[20] UTAH R. CRIM. P. 11(e)(4)(A).

guilty."[21] Mr. Arriaga has thus provided sufficient evidence at the summary judgment stage to support his assertion that he did not understand the implications of imperfect self-defense for his murder plea. Accordingly, a genuine issue of material fact exists, and the post-conviction court erred in concluding, as a matter of law, that his plea was knowing and voluntary.

¶21 The essential elements of first-degree murder include (1) intentionally or knowingly (2) causing the death of another, and if the accused has offered some evidence of an affirmative defense, (3) the absence of that affirmative self-defense, including the affirmative defense of imperfect self-defense.[22] Imperfect self-defense is available when the defendant "caused the death of another . . . under a reasonable belief that the circumstances provided a legal justification or excuse for the conduct although the conduct was not legally justifiable or excusable under the circumstances."[23] And a successful claim of imperfect self-defense "reduces murder to manslaughter."[24] So, at trial, the State would have had to prove the lack of a valid imperfect self-defense claim in order to convict Mr. Arriaga of first-degree murder.[25] The record demonstrates that

---

[21] *Alexander*, 2012 UT 27, ¶ 30. In order to determine what the defendant understood upon entering his or her plea, appellate courts are not limited to the plea colloquy or plea affidavit but may also look to the "surrounding facts and circumstances." *Id.* ¶ 31 (citation omitted) (internal quotation marks omitted).

[22] UTAH CODE §§ 76-5-203(2)(a), (4)(a). The State argues that the absence of imperfect self-defense is not an element of murder. However, in *State v. Low*, we held that after legislative amendments in 1999, imperfect self-defense is no longer a lesser included offense but an "affirmative defense[] to murder." 2008 UT 58, ¶ 24, 192 P.3d 867. Once the accused has offered evidence of an affirmative defense, the absence of that defense is an element of murder that the State must prove beyond a reasonable doubt. *Id.* ¶ 45.

[23] UTAH CODE § 76-5-203(4)(a).

[24] *Low*, 2008 UT 58, ¶ 22.

[25] A "defendant's burden to demonstrate that the factual record supports an affirmative defense instruction is relatively low," *State v. White*, 2011 UT 21, ¶ 22, 251 P.3d 820, and "only a minimum threshold of evidence" is required to "establish the affirmative defense." *Ross v. State*, 2012 UT 93, ¶ 29, 293 P.3d 345. So even

(Continued)

there is a genuine issue of material fact as to whether Mr. Arriaga understood this.

¶22 Mr. Arriaga points to three pieces of evidence in the record to argue his plea was not knowingly or voluntarily made. First, he argues the statements he made during the plea colloquy negate the essential elements of murder. Second, he argues the Plea Affidavit does not include the absence of imperfect self-defense as an element of murder. And third, he argues trial counsel did not adequately explain imperfect self-defense in relation to the facts of his case. We conclude that there is a genuine dispute as to whether he understood that the absence of imperfect self-defense is an element of murder.

¶23 The transcript of the plea colloquy suggests Mr. Arriaga did not understand the relationship between his murder charge and imperfect self-defense. During that colloquy, he made statements that could conceivably support an imperfect self-defense theory. Trial counsel stated that Mr. Arriaga initiated the encounter with Mr. Herrera, but pulled out a gun only to scare Mr. Herrera after the two had already been fighting. And Mr. Arriaga claimed he thought Mr. Herrera may have been on drugs and may have been armed. Additionally, Mr. Arriaga informed the district court that he defended himself, and never thought about hurting Mr. Herrera. This suggests that Mr. Arriaga may not have understood that imperfect self-defense, if presented and proven at trial, could prevent him from being convicted of first-degree murder. And this misunderstanding was not clarified by the district court or by Mr. Arriaga's trial counsel.

¶24 In an attempt to clarify the meaning of these statements, the district court asked Mr. Arriaga if he understood that "by pulling the trigger [Mr. Arriaga] knew [he] could cause the death of the [victim]," to which Mr. Arriaga replied that he did. But even though the court's statement was meant to clarify that Mr. Arriaga had the

though the use of lethal force is not legally justified when the defendant "provokes the use of force . . . with the intent to use force as an excuse to inflict bodily harm," Utah Code section 76-2-402(3)(a)(i), or when the defendant is the aggressor and does not withdraw from the encounter, *id.* § 76-2-402(3)(a)(iii), Mr. Arriaga's self-defense statements were sufficient to show a genuine issue of material fact in this regard.

requisite intent to commit murder,[26] it, together with Mr. Arriaga's reply, did not contradict Mr. Arriaga's statements that he acted in self-defense. A defendant may pull the trigger, knowing that doing so will cause the death of another, but if the defendant acted in self-defense, he or she would be guilty only of manslaughter, not murder.[27] So in asking whether Mr. Arriaga knew that pulling the trigger could cause Mr. Herrera's death, the court did not address the question of whether Mr. Arriaga pulled the trigger to defend himself.

¶25 Additionally, trial counsel's statements at the plea colloquy did not clarify that Mr. Arriaga understood imperfect self-defense. When the district court requested a factual basis for the plea, trial counsel's response included specific factual statements that did not eliminate the possibility that Mr. Arriaga acted in self-defense.[28] The district court then questioned Mr. Arriaga, and he confirmed that he acted in self-defense.[29] When the court asked trial counsel to clarify Mr. Arriaga's response, counsel stated that he "discussed the imperfect self-defense concept"[30] with Mr. Arriaga, "that the man

---

[26] Adding further confusion, the district court's use of the verb "could" indicates a reckless, rather than knowing, mens rea. *See State v. Thurman*, 911 P.2d 371, 373–74 (Utah 1996) (holding the plain language of Utah's aggravated murder statute required an intentional and knowing mental state despite one statutory factor that included a "lesser mental state" — the actor "knew, or reasonably should have known, that his act or acts would create a great risk of death to human life"). But because neither party raises this issue, we decline to address it.

[27] *See Low*, 2008 UT 58, ¶ 34; *see also* UTAH CODE §§ 76-5-203(4)(a), (c); *id.* § 76-2-402(3)(a).

[28] Specifically, trial counsel stated that Mr. Arriaga "confronted a man who had been sleeping with his wife. An argument and subsequent fight took place at which time he pulled out a firearm and he shot the man killing him."

[29] The district court asked Mr. Arriaga if trial counsel's statement was in fact what happened. Mr. Arriaga replied, "I defended myself. It was not my intention. I never thought about hurting him."

[30] "[F]or a plea to be knowing and voluntary, a defendant must possess more than a conceptual understanding of the nature of the

(Continued)

charged at him but [] was unarmed" which was "why [Mr. Arriaga] used a gun." So trial counsel continued to present facts to support, rather than disprove, the theory that Mr. Arriaga acted in self-defense. Because these statements call into question trial counsel's understanding of imperfect self-defense in relation to the facts of Mr. Arriaga's case, trial counsel's assurance that he discussed the imperfect self-defense concept with Mr. Arriaga does not prove that Mr. Arriaga correctly understood the concept when making his plea.[31]

¶26 In sum, during the plea colloquy, Mr. Arriaga made statements that strongly suggest he did not understand the role an imperfect self-defense theory could have played in his murder trial. And nothing the district court or Mr. Arriaga's trial counsel said clarified this apparent misunderstanding. For this reason, the plea colloquy does not demonstrate that Mr. Arriaga was adequately informed of the essential elements of murder.

¶27 Second, the Plea Affidavit does not prove that Mr. Arriaga understood that the absence of imperfect self-defense is an element of murder. As to the elements of the charge, the affidavit states that Mr. Arriaga "knowingly and intentionally caused the death of another." As to the factual basis for the plea, the affidavit states that Mr. Arriaga fought with Mr. Herrera prior to shooting him. Neither of these statements are inconsistent with an imperfect self-defense theory. And, significantly, the Plea Affidavit does not include or describe the absence of imperfect self-defense as an element of murder, nor does it provide evidence that Mr. Arriaga understood how imperfect self-defense applied in his case.

---

offense; he must have 'an understanding of the law in relation to the facts.'" *Alexander*, 2012 UT 27, ¶ 35 (citation omitted).

[31] "[T]he court usually may rely on . . . counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). But reliance is not appropriate when trial counsel's own statements misstate the law. *See Hicks v. Franklin*, 546 F.3d 1279, 1285 (10th Cir. 2008) (finding that a when the trial court misstated the law on an additional charge in the plea colloquy and defense counsel failed to correct the error, the "presumption that defense counsel properly explained the charge to the defendant seems unwarranted").

¶28 Finally, nowhere else in the record is there any indication that Mr. Arriaga was adequately informed that the absence of imperfect self-defense was an element of murder. In Mr. Arriaga's initial police interview, he maintained that he did not intend to kill Mr. Herrera but acted in self-defense. And in the PCRA evidentiary hearing, the State's attorney testified that the only defense trial counsel discussed with the State was the extreme emotional distress defense. During this hearing, the State's attorney referred to manslaughter as a "lesser charge," which indicates the State did not view it necessary to negate Mr. Arriaga's affirmative defense to prove an element of murder. And when Mr. Arriaga's PCRA counsel began questioning trial counsel about other potential defenses that could have been raised, the State objected, stating it was outside the scope of Mr. Arriaga's petition. The post-conviction court suspended the evidentiary hearing to allow Mr. Arriaga to file a second amended petition. Thus, the other evidence in the record strongly suggests that Mr. Arriaga was not informed that an imperfect self-defense affirmative defense could have been used to defeat the State's first-degree murder charge.

¶29 In sum, evidence in Mr. Arriaga's plea colloquy, Plea Affidavit, and elsewhere in the record suggests he did not understand the concept of imperfect self-defense or realize that its absence is an element of the murder charge to which he pled guilty.[32] Because Mr. Arriaga provided sufficient evidence that he did not understand the absence of imperfect self-defense was an element of murder, we hold that a genuine issue of material fact remains as to whether his plea was knowingly and voluntarily made. Accordingly, the majority of the court of appeals erred on this point.[33]

---

[32] *See Alexander*, 2012 UT 27, ¶¶ 33–37 (holding that the defendant's plea was not knowingly and voluntarily made when the record—including the preliminary hearing transcript, Plea Affidavit, plea colloquy transcript, amended charging documents—did not "demonstrate that [the defendant] was informed of or understood the essential elements" of the crime).

[33] We note that our analysis on this point accords with Judge Pohlman's concurring opinion. Judge Pohlman concurred in the result of the court of appeals' opinion because Mr. Arriaga failed to establish prejudice, but she questioned whether the district court "adequately remedied the conflict between the statements in [Mr. Arriaga]'s plea affidavit and his self-defense assertions during

(Continued)

*B. Mr. Arriaga has not produced evidence to support his claim that he was prejudiced as a result of his unknowing and involuntary plea*

¶30 Although Mr. Arriaga has provided evidence sufficient to avoid summary judgment on the issue of whether his plea was unknowing and involuntary, we nevertheless affirm the court of appeals because he has not produced evidence that he was prejudiced as a result. To obtain relief under the PCRA, it is not enough for a petitioner to show his or her conviction was obtained in violation of the United States Constitution.[34] A petitioner must also show he or she suffered prejudice as a result of this constitutional error.[35]

¶31 Under the PCRA, a petitioner demonstrates prejudice by showing "a reasonable likelihood of a more favorable outcome in light of the facts proved in the post-conviction proceeding, viewed with the evidence and facts introduced at trial or during sentencing."[36] This standard is equivalent to the prejudice analysis courts use to assess ineffective-assistance-of-counsel claims.[37] So in

---

the plea colloquy." *Arriaga v. State*, 2018 UT App 160, ¶ 22, 436 P.3d 222 (Pohlman, J., concurring in part and concurring in the result).

[34] Showing that a conviction was obtained in violation of the United States Constitution is one of several "grounds for relief" a petitioner may establish under the PCRA. *See* UTAH CODE § 78B-9-104(1)(a).

[35] *Id.* § 78B-9-104(2).

[36] *Id.*

[37] These two standards are equivalent because the language of the PCRA statute is the same as that of the harmfulness prong under our plain-error analysis, which itself is equivalent to the prejudice analysis of an ineffective-assistance-of-counsel claim. *Compare Low*, 2008 UT 58, ¶ 43 ("An error is harmful if it is 'of such a magnitude that there is a reasonable likelihood of a more favorable outcome for the defendant.'"(citation omitted)) *with* UTAH CODE § 78B-9-104 ("The court may not grant relief . . . unless the petitioner establishes that there would be a reasonable likelihood of a more favorable outcome . . . ."). This test is a legal term of art. And "[w]hen the legislature 'borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken.'" *Maxfield v.*
(Continued)

determining prejudice under the PCRA, we look to ineffective-assistance-of-counsel case law to determine the merits of Mr. Arriaga's claim.

¶32 In order to prove there is a "reasonable likelihood of a more favorable outcome"[38] in a plea case, a defendant must show "there is a reasonable probability that, but for [the] error[], he would not have pleaded guilty and would have insisted on going to trial."[39] In other words, we consider the effect the constitutional error at issue had on a defendant's decision to plead guilty rather than go to trial. In most cases, a defendant's decision to plead guilty will "turn[] on [his or her] prospects of success" at trial.[40] And when it does, defendants must show they "would have been better off going to trial" in order to establish prejudice.[41]

¶33 In order to survive summary judgment, Mr. Arriaga had to produce evidence that he would not have pled guilty had he known about the possibility of bringing an imperfect self-defense claim at trial. But he provides "no evidence to support an essential element of" his theoretical imperfect self-defense claim.[42] In fact, he concedes that his "chances at trial may have been slim." Because he fails to provide evidence that he would have succeeded on his imperfect self-defense claim at trial, no genuine issue of material fact exists as to whether there was "a reasonable probability that, but for [the] error, he would not have pleaded guilty and would have insisted on going to trial."[43]

¶34 Instead, Mr. Arriaga argues he does not have to show that he would have succeeded on his imperfect self-defense claim,

---

*Herbert*, 2012 UT 44, ¶ 31, 284 P.3d 647 (quoting *Morissette v. United States*, 342 U.S. 246, 263 (1952)). So we assume that, by incorporating the "reasonable likelihood of a more favorable outcome" language into the PCRA, the legislature intended to incorporate the accompanying well-developed body of ineffective-assistance-of-counsel jurisprudence.

[38] UTAH CODE § 78B-9-104(2).

[39] *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

[40] *Lee v. United States*, 137 S.Ct. 1958, 1965 (2017).

[41] *Id.* at 1965.

[42] *Salo v. Tyler*, 2018 UT 7, ¶ 2, 417 P.3d 581.

[43] *Hill*, 474 U.S. at 59.

because his decision to plead guilty did not "turn[] on his prospects of success" at trial.[44] He argues, relying on the United States Supreme Court's decision in *Lee v. United States*,[45] that there is "a reasonable probability that, but for [the] error[], he would not have pleaded guilty and would have insisted on going to trial" because it affected his understanding of the consequences of his plea.[46] But, under the Supreme Court's decision in *Lee*, a misunderstanding regarding a potential affirmative defense is not enough to support a finding of prejudice.

¶35 In *Lee*, the Supreme Court explained that, in limited circumstances, a defendant may rationally reject a plea deal where "special circumstances"[47] suggest that "there is more to consider than simply the likelihood of success at trial."[48] And the Court explained that where these "special circumstances" exist, defendants need not demonstrate a likelihood of success at trial.[49] Rather, they need only show that if "properly advised, [they] would have opted to go to trial."[50] But the Court cautioned that "special circumstances" arise only when a defendant provides "substantial and uncontroverted" evidence that something other than a more favorable outcome at trial was a determinative issue at the time the plea decision was made.[51]

¶36 Mr. Arriaga argues that his case involves special circumstances similar to those in *Lee*. But we disagree for two reasons: (1) Mr. Arriaga fails to persuade us that his misunderstanding regarding his imperfect self-defense claim constitutes a "special circumstance[]" and (2) he fails to provide

---

[44] *Lee*, 137 S.Ct. at 1965.

[45] *Id.* at 1958.

[46] *Id.* at 1969 (quoting *Hill*, 474 U.S. at 59).

[47] *Id.* at 1965 (quoting *Hill*, 474 U.S. at 60).

[48] *Id.* at 1966.

[49] *Id.* at 1965 (quoting *Hill*, 474 U.S. at 60).

[50] *Id.* at 1966; *see also Hill*, 474 U.S. at 60. In so doing, a defendant attempts to convince the court that something other than his or her prospect at trial was a "determinative issue" in the decision to plead guilty rather than proceed to trial. *See Lee*, 137 S.Ct. at 1967.

[51] *Lee*, 137 S.Ct. at 1969.

substantial and uncontroverted evidence his imperfect self-defense claim was a determinative issue in his plea decision at the time he entered his plea.

¶37 Mr. Arriaga does not show how his imperfect self-defense claim was a "special circumstance[]" that would have given him a rational basis to reject his plea deal.[52] As the Court in *Lee* explained, in limited circumstances, a defendant may rationally reject a plea deal because "there is more to consider than simply the likelihood of success at trial."[53] In that case, Mr. Lee convinced the Court that his decision to go to trial "without any viable defense"[54] was rational because, under the circumstances, "the consequences of taking a chance at trial were not markedly harsher than pleading" guilty.[55] This was so because the determinative issue for Mr. Lee was not the length of a potential prison sentence, but his desire to avoid deportation.[56] Mr. Arriaga fails to point to any such "special circumstance" in this case.

¶38 Mr. Arriaga points to his plea-colloquy statements as evidence that he desired to maintain his imperfect self-defense claim. But a desire to maintain a potential trial defense could rationally lead a defendant to forego a plea deal and risk a harsher sentence at trial only if there was a reasonable likelihood of the defendant succeeding on that defense. This is because the purpose of asserting imperfect self-defense is to avoid or reduce time spent in prison.[57] And since Mr. Arriaga fails to produce evidence that he would have succeeded

---

[52] *Hill*, 474 U.S. at 60.

[53] *Lee*, 137 S.Ct. at 1966.

[54] *Id.*

[55] *Id.* at 1969; *see also id.* at 1968 ("[P]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence." (citation omitted) (internal quotation marks omitted)).

[56] Mr. Lee's trial counsel told him on multiple occasions that his plea would not lead to deportation, which the State conceded was deficient performance. *Id.* at 1964.

[57] *See Low*, 2008 UT 58, ¶ 22 ("[T]he assertion of a successful affirmative defense of . . . imperfect self-defense reduces murder to manslaughter").

with his imperfect self-defense claim at trial,[58] it would have been irrational for him to forego his plea deal for the sole purpose of maintaining that defense. So, unlike the defendant in *Lee*, Mr. Arriaga has not met his burden of showing it would have been rational to forego his plea deal under the circumstances of his case.

¶39 Also unlike the defendant in *Lee*, Mr. Arriaga fails to provide substantial and uncontroverted evidence that his imperfect self-defense claim was a determinative issue in his decision. In *Lee*, Mr. Lee provided three pieces of evidence to support his claim that, had he known about the deportation consequences at the time of his plea, he would have risked going to trial. First, he explained that he had lived in the United States for most of his life, owned two businesses in Tennessee, and was the "only family member in the United States who could care for his elderly parents."[59] Second, he explained that, after the trial court "warned him that a conviction 'could result in . . . being deported'" at the plea colloquy, Mr. Lee told the trial court this affected his decision to plead guilty, but that he nevertheless proceeded with his plea only because his trial counsel erroneously assured him that he would not be deported as a result of pleading guilty.[60] And third, he testified that he "asked his attorney repeatedly whether there was any risk of deportation from the [plea] proceedings."[61] In fact, both he and his trial counsel testified in the evidentiary hearing that, had Mr. Lee known of the deportation consequences, he "would have gone to trial."[62] So Mr. Lee pointed to contemporaneous, substantial, and uncontroverted evidence that he would not have pled guilty absent the error. Mr. Arriaga does not make as compelling a case.

¶40 Although he points to two pieces of evidence to support his claim, we find neither persuasive. First, Mr. Arriaga states in his PCRA affidavit that, had he understood the nature of his plea, he would not have pled guilty. And second, he points to his self-defense statements at the plea colloquy, which he argues demonstrate that, to him, maintaining his theory of imperfect

---

[58] *See supra* ¶ 33.

[59] *Lee*, 137 S.Ct. at 1968.

[60] *Id.*

[61] *Id.* at 1967–68.

[62] *Id.* at 1968.

self-defense was a determinative issue. But this is not the kind of "substantial and uncontroverted" evidence identified in *Lee*, and it fails to show a genuine issue of material fact as to whether Mr. Arriaga's imperfect self-defense claim was the determinative issue in his decision to plead guilty.

¶41 Mr. Arriaga's first piece of evidence is not persuasive because it is nothing more than a "*post hoc* assertion . . . about how he would have pleaded but for [the error]."[63] Courts "should not upset a plea solely because of" such assertions, but "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."[64] Because Mr. Arriaga points to no contemporaneous evidence to support his position that he would not have pled guilty had he known he could have raised an imperfect self-defense claim, we are left with only his after-the-fact assertion that he would have done so. This is not enough to persuade us to upset his plea.

¶42 Mr. Arriaga's second piece of evidence is similarly unpersuasive. Although Mr. Arriaga's statements during the plea colloquy demonstrate his confusion regarding a potential imperfect self-defense claim, he did not request clarification from the district court or trial counsel, or refuse, without further clarification, to proceed. So even though Mr. Arriaga now claims that his "determinative issue" was maintaining his claim of imperfect self-defense, the plea colloquy provides evidence only of his confusion regarding the role an imperfect self-defense claim might play at trial. It does not provide evidence that Mr. Arriaga's desire to raise an imperfect self-defense claim was of such "paramount importance" that he would have foregone his guilty plea had he properly understood that element.[65] For this reason, Mr. Arriaga's second piece of evidence fails to persuade us to upset his plea.

¶43 In sum, Mr. Arriaga fails to provide substantial, uncontroverted, and contemporaneous evidence that his case presents the kind of "special circumstances," identified in *Lee*, such that it would have been rational for him to forego his plea despite not having a reasonable likelihood of success at trial. In other words,

---

[63] *Id.* at 1967.

[64] *Id.*

[65] *Id.* at 1968.

he has failed to show that, had he understood that the absence of imperfect self-defense was an element of murder, he would have elected to proceed to trial rather than accept the plea deal. As a result, there is no genuine issue of material fact on the question of whether Mr. Arriaga was prejudiced as a result of his plea. We therefore affirm the court of appeals.

### III. Mr. Arriaga Has Failed to Produce Evidence That His Counsel's Performance was Deficient

¶44 Mr. Arriaga also argues that the court of appeals erroneously affirmed the post-conviction court's determination that he is not entitled to post-conviction relief because his trial counsel's performance was not deficient.[66] He asserts that his counsel was deficient in failing to obtain an interpreter, even though Mr. Arriaga is a native Spanish speaker. And he argues that, as a result of trial counsel's failure to obtain an interpreter, he did not understand trial counsel's advice about the plea, or that he was innocent until proven guilty at trial. Because Mr. Arriaga does not produce evidence that his trial counsel's performance fell below an objective standard of reasonable professional judgment, we affirm the court of appeals' conclusion that no genuine issue of material fact exists on this point.

¶45 In order to prevail on an ineffective-assistance-of-counsel claim under the PCRA, Mr. Arriaga must first meet his burden of proof as articulated in *Strickland v. Washington*.[67] Under *Strickland*, Mr. Arriaga must demonstrate that counsel "rendered deficient performance which fell below an objective standard of reasonable professional judgment."[68] Additionally, he must show he was prejudiced as a result of trial counsel's deficient performance.[69] Because we reject this argument on the ground that Mr. Arriaga failed to meet his summary judgment burden of production on his claim that trial counsel's performance fell below an objective standard of reasonable professional judgment, we need not address

---

[66] *See* UTAH CODE § 78B-9-104(1)(d).

[67] 466 U.S. 668, 687 (1984).

[68] *State v. Maestas*, 1999 UT 32, ¶ 20, 984 P.2d 376 (citation omitted); *see also Moench v. State*, 2004 UT App 57, ¶ 21, 88 P.3d 353 (citing *Strickland*, 466 U.S. at 687).

[69] *Strickland*, 466 U.S. at 687; *see also Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

whether Mr. Arriaga was prejudiced as a result of counsel's performance.[70]

¶46 Mr. Arriaga has failed to produce evidence that his trial counsel's failure to obtain an interpreter constituted deficient performance falling below an objective standard of reasonableness. Although a trial counsel's failure to obtain an interpreter could fall below an objective standard of reasonable professional judgment in a number of ways,[71] Mr. Arriaga fails to produce evidence it did so in this case. This is because, at the plea colloquy, Mr. Arriaga swore that he fully understood his trial counsel's advice and, on appeal, he

---

[70] *State v. Lopez*, 886 P.2d 1105, 1115 (Utah 1994) ("Because [the petitioner] has not satisfied the first prong of the *Strickland* test, we do not need to determine whether he has satisfied the second prong.").

[71] First, it may violate rules of professional conduct because trial counsel must "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." UTAH R. PROF'L CONDUCT 1.4(b). This rule requires that a client have "sufficient information to participate intelligently in decisions." *Id.* cmt. 5. A language barrier between counsel and a defendant may prevent a defendant from making an intelligent and informed decision regarding a plea agreement. So counsel's failure to obtain an interpreter when a language barrier exists could raise constitutional concerns.

This is because a failure to provide an interpreter in criminal proceedings may violate a defendant's right to due process. *See Ling v. State*, 702 S.E.2d 881, 883 (Ga. 2010) ("[F]ailure to provide adequate interpretation services to a defendant in criminal proceedings implicates due process concerns."). Additionally, where a defendant cannot comprehend the proceeding, he or she may not be constitutionally present. *See Tennessee v. Lane*, 541 U.S. 509, 523 (2004) (stating that the federal Due Process and Confrontation Clauses "as applied to the States through the Fourteenth Amendment" guarantee criminal defendants be present at all stages of the trial where their absence might frustrate the fairness of the proceedings) (quoting *Faretta v. California*, 422 U.S. 806, 819 n.15 (1975) (internal quotation marks omitted)). Furthermore, it may be difficult for trial counsel to adequately explain criminal proceedings and charges, and subsequently prepare a defendant for a plea hearing, when such a language barrier exists.

fails to rebut the presumption of truthfulness the law accords this sworn statement.[72]

¶47  At multiple points in the plea process, Mr. Arriaga had the opportunity to inform trial counsel or the district court that, as a result of a language barrier, he did not understand trial counsel's advice. But through an interpreter at the plea hearing, Mr. Arriaga affirmatively informed the district court that he (1) understood everything counsel had talked to him about; (2) was satisfied with the advice and assistance of trial counsel; (3) went through the Plea Agreement with trial counsel prior to the hearing; and (4) was not forced by anyone to enter a guilty plea. Mr. Arriaga also signed and attested to the contents of the Plea Agreement, written in both Spanish and English, agreeing that he read the Plea Agreement, discussed the contents with trial counsel, and was satisfied with the advice and assistance of trial counsel. These statements, taken together, indicate that Mr. Arriaga did not need the assistance of an interpreter in communicating with his trial counsel, and Mr. Arriaga fails to provide contrary evidence on appeal.

¶48 The "'truth and accuracy' of a defendant's statements during the [plea colloquy] 'should be regarded as conclusive in the absence of a believable, valid reason justifying a departure from the apparent truth of his [plea colloquy] statements.'"[73] Mr. Arriaga does not raise a believable, valid reason for doubting the truth of his statements at the plea colloquy. An interpreter was provided at the plea colloquy in which he made those statements. And Mr. Arriaga does not provide any evidence to indicate that he had trouble communicating with his trial counsel in any of his previous attorney-client meetings. In fact, Mr. Arriaga does not allege or provide any evidence that he requested an interpreter when interacting with his trial counsel.

---

[72] *See Oliver v. State*, 2006 UT 60, ¶ 13, 147 P.3d 410 (stating that a court may rely "on the defendant's own assurance . . . that the defendant's mind is clear" (citation omitted) (internal quotation marks omitted)); *see also Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity.").

[73] *United States v. Weeks*, 653 F.3d 1188, 1205 (10th Cir. 2011) (citation omitted).

¶49 In sum, Mr. Arriaga fails to provide a plausible or valid reason for disbelieving his affirmative statements, both in the Plea Agreement and during the plea colloquy, that he understood everything trial counsel informed him of before the plea hearing. So Mr. Arriaga has not produced evidence that his trial counsel's failure to obtain an interpreter constituted deficient performance. For this reason, we affirm the court of appeals' conclusion that no genuine issue of material fact exists.

## Conclusion

¶50 Although Mr. Arriaga provided sufficient evidence to avoid summary judgment on whether he understood the nature of his plea, he fails to provide sufficient evidence that he was prejudiced by this misunderstanding. So his claim that his plea was unknowing and involuntary fails because there is no genuine issue of material fact as to whether he was prejudiced as a result. Additionally, we conclude that there is no genuine issue of material fact as to whether his trial counsel's performance, in not obtaining an interpreter, fell below an objective standard of reasonable professional judgment. As a result, we affirm the court of appeals.

―――――――――