**2020 UT App 125**

## THE UTAH COURT OF APPEALS

MICHAEL JONES,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
No. 20180722-CA
Filed August 27, 2020

Third District Court, Salt Lake Department
The Honorable Mark S. Kouris
No. 160900311

Michael Jones, Appellant Pro Se

Sean D. Reyes and Shane D. Smith,
Attorneys for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES GREGORY K. ORME and DAVID N. MORTENSEN concurred.

POHLMAN, Judge:

¶1 In 2010, Michael Jones was convicted of murder, aggravated robbery, and unlawful distribution of a controlled substance. His convictions were affirmed on direct appeal. In 2016, he filed a petition for post-conviction relief in which he raised numerous grounds for a new trial or resentencing. The State moved for summary judgment. The district court granted the State's motion and denied the petition. Jones now appeals, and we affirm.

BACKGROUND[1]

*The Underlying Criminal Case*

¶2     In February 2004, officers on patrol spotted a blue Honda "just parked there by itself." When they looked inside, they found Tara Brennan[2] deceased with a belt around her neck, stab wounds to her face, defensive wounds to her hands, and a "significant slash" to her neck. The car's interior bore signs of a struggle: shoe scuff marks on the ceiling and a window, a broken rearview mirror, and "blood throughout" the back of the car.

¶3     The killer had taken Brennan's life, her wallet, and about $200 cash but had left behind his Y-chromosome DNA under her fingernails and on the belt used to strangle her. The Y-chromosome profile was rare; it excluded 99.6% of males. Jones's DNA was found on a cigarette butt in the front seat of the car, and he could not be excluded as a possible contributor of the Y-chromosome DNA found on the belt and under Brennan's fingernails.

---

1. "A recitation of the facts surrounding [Jones's] criminal case is necessary to understand the issues on appeal. We present the facts in a light favorable to the prosecution, and consistent with the judgment of conviction." *See Lynch v. State*, 2017 UT App 86, ¶ 2 n.1, 400 P.3d 1047 (cleaned up); *see also Gregg v. State*, 2012 UT 32, ¶ 2, 279 P.3d 396.

2. Although "[t]his court typically does not include the names of crime victims, witnesses, or other innocent parties in its decision," *State v. Chavez-Reyes*, 2015 UT App 202, ¶ 1 n.2, 357 P.3d 1012, these individuals were identified in the opinion on Jones's direct appeal, *see State v. Jones*, 2015 UT 19, ¶¶ 2, 9 & n.1, 345 P.3d 1195. Thus, "obscuring [their] identit[ies] . . . would serve no purpose." *See Chavez-Reyes*, 2015 UT App 202, ¶ 1 n.2.

¶4    Jones admitted to being with Brennan on the night she was murdered, buying crack cocaine with her and smoking crack and cigarettes with her. When Jones talked to police, he claimed to have stayed the night at the homeless shelter, but the shelter logs did not show that he checked in that night. And while he claimed to have worn a purple down jacket that night, police could not find it. He told police that he gave the coat to his mother, but even after they executed a warrant on the mother's house, the coat was never recovered.

¶5    Brennan's mother (Mother) testified at trial that on the day before the murder, she and Brennan went to the bank to cash a check of Brennan's for about $350. Mother also testified that Brennan gave her $100 for car insurance and spent about $50 on a new battery for her Honda.

¶6    After running errands with Mother, Brennan drove the car around, ostensibly to see if it still ran well after having sat in Mother's driveway for a year. Mother testified that she believed Brennan had about $200 with her—the amount remaining from the cashed check after the insurance and battery payments. Brennan habitually carried a wallet in which she kept her money and identification. But when the police found Brennan's body the next day, the wallet and money she had the day before were gone.

¶7    The State charged Jones with murder, aggravated robbery, and unlawful distribution of a controlled substance. Jones moved to exclude the Y-chromosome DNA evidence. The trial court[3] denied the motion.

---

3. We use the term "trial court" to refer to the court that presided over Jones's original criminal trial, and we use the term "district court" to refer to the court that presided over the post-conviction proceedings.

¶8    At trial, the jury heard the Y-chromosome DNA evidence, which consisted of results from Y-STR DNA testing.[4] Such testing focuses only on the Y chromosome and enables analysts to identify a very small amount of male DNA that might otherwise go undetected in the presence of a large amount of female DNA. But because the Y chromosome is usually identical up and down paternal lines, Y-STR DNA testing can only exclude suspects rather than affirmatively identify them. Yet some Y-chromosome profiles, or haplotypes, are rarer than others.

¶9    Defense counsel cross-examined one of the State's investigators about a blond hair found on the side of the Honda. The investigator testified that it appeared to be the blond crime lab technician's hair, so it was not processed. The investigator also testified that the State did not have the technology necessary for testing the hair for DNA at the time of the 2004 investigation.

¶10    Defense counsel also cross-examined investigators about not following up on one of Jones's associates—Carlaya Yazzie. Officers received information that Yazzie may have been with Jones on the night of the murder. Jones told officers that he knew Yazzie from his time at the homeless shelter, but he denied that he had been with Yazzie that night.

_____

4. As explained by an expert at an evidentiary hearing before the trial court, "Y-STR DNA testing is a form of PCR STR testing, which stands for polymerase chain reaction using short tandem repeats. Traditional PCR STR testing . . . analyzes repeating chemical patterns . . . at specific loci on the twenty-three pairs of chromosomes that contain DNA." *Jones*, 2015 UT 19, ¶ 22. Y-STR DNA testing "is similar to traditional PCR STR testing in that it looks to repeating patterns at certain loci; however, Y-STR PCR analyzes only the Y chromosome, which is carried only by males." *Id.*

¶11   Defense counsel elicited testimony that Yazzie was one of about forty people interviewed who may have had contact with Brennan on the night of the murder. Counsel further elicited that Yazzie was the only female person of interest in the case and that officers did not obtain a DNA sample from her. Yazzie was a convicted felon. Thus, officers had reason to believe that she would be in the criminal database against which DNA samples are run to find matches.

¶12   In closing argument, defense counsel argued that the blond hair on the side of the Honda may have belonged to a man a witness saw cleaning the vehicle on the morning after the murder. Counsel argued that investigators' failure to test the blond hair was an "oversight" in the investigation. Counsel also suggested that Yazzie could have been the murderer because she was a suspect and the State had not excluded her as a potential contributor to the DNA found at the crime scene.

¶13   The jury convicted Jones on all counts. At the sentencing hearing, defense counsel raised several concerns with the presentence investigation report and asked the court to correct several items on it, including a minimum mandatory sentence of twenty-four years. Counsel then asked that the court sentence Jones to concurrent, rather than consecutive, sentences. The State responded by arguing for consecutive sentences, citing the circumstances of the murder and noting that Jones committed the murder only five months after being released from prison and had been arrested on another felony shortly after the murder.

¶14   After reviewing the presentence investigation report, noting defense counsel's objections to the report, hearing from Mother, and considering the State's request, the trial court sentenced Jones to five years to life in prison for the murder, five years to life for the aggravated robbery, and one to fifteen years

for the drug conviction. The court ordered the prison terms to run consecutively.

¶15 On direct appeal, Jones argued that (1) "the trial court erred when it admitted Y-STR DNA evidence linking [him] to the murder weapon," (2) "the trial court erred when it denied admission of [his] second police interview" or his counsel was ineffective in failing "to put his statements during the police interview into context," (3) the trial court erred when it admitted testimony that Jones believed was "anecdotal statistical evidence," (4) the State committed prosecutorial misconduct in making certain statements in closing argument, and (5) "the State's evidence was insufficient to sustain convictions for murder or aggravated robbery." *State v. Jones*, 2015 UT 19, ¶ 1, 345 P.3d 1195. The Utah Supreme Court rejected Jones's arguments and affirmed his convictions. *Id.*

### *The Post-Conviction Proceedings*

¶16 In 2016, Jones filed a pro se petition for post-conviction relief in which he raised numerous grounds for relief. He claimed that the trial court had committed several errors and that he had received constitutionally ineffective assistance of trial and appellate counsel in other various ways. The State moved for summary judgment on every ground. According to the State, Jones's claims were either procedurally barred or failed on their merits. Jones opposed the State's motion, arguing, among other things, that the procedural bars are unconstitutional.

¶17 After a hearing, the district court granted the State's motion. The court ruled that Jones's claims of trial court error were procedurally barred, that his constitutional challenge to the procedural bars were meritless, and that his claims of ineffective assistance of counsel all failed as a matter of law. Accordingly, the district court granted the State's motion for summary

judgment and denied Jones's petition for post-conviction relief. Jones appeals.

ISSUE AND STANDARD OF REVIEW

¶18    Jones contends that the district court erred in granting summary judgment to the State and denying his petition for post-conviction relief. We give no deference to the district court in reviewing its grant of summary judgment or its order denying a petition for post-conviction relief. *Ross v. State*, 2012 UT 93, ¶ 18, 293 P.3d 345. We review such rulings for correctness. *Id.* We will affirm the grant of summary judgment "when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (cleaned up); *see also* Utah R. Civ. P. 56(a). "In making this assessment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to" Jones, the nonmoving party. *See Ross*, 2012 UT 93, ¶ 18 (cleaned up).

ANALYSIS

¶19    At the outset, we recognize that Jones is a pro se litigant. "Appellate courts are generally lenient with pro se litigants," *Chaparro v. Torero*, 2018 UT App 181, ¶ 33, 436 P.3d 339 (cleaned up), and extend "every consideration that may reasonably be indulged," *Allen v. Friel*, 2008 UT 56, ¶ 11, 194 P.3d 903 (cleaned up). But "reasonable indulgence is not unlimited indulgence," and generally parties who represent themselves "will be held to the same standard of knowledge and practice as any qualified member of the bar." *Id.* (cleaned up). Thus, while a "lack of technical knowledge of law and procedure should be accorded every consideration that may reasonably be indulged," pro se litigants are still "required to adhere to procedural rules and the

law." *State v. Boyles*, 2015 UT App 185, ¶ 18 n.7, 356 P.3d 687 (cleaned up).[5]

¶20 Utah appellate courts require a party to "explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal." Utah R. App. P. 24(a)(8). We thus "require the appellant to address reasons why the district court's [rulings] should be overturned." *Allen*, 2008 UT 56, ¶ 14. And an appellant's burden of persuasion is not met "if the argument merely contains bald citations to authority without development of that authority and reasoned analysis based on that authority." *Bank of Am. v. Adamson*, 2017 UT 2, ¶ 11, 391 P.3d 196 (cleaned up). While "we are reluctant to penalize self-represented litigants for technical rule violations, we will not assume an appellant's burden of argument and research." *Allen*, 2008 UT 56, ¶ 9 (cleaned up). Our focus is "on whether the appellant has established error, not on whether there is a technical deficiency in briefing meriting a default." *Chaparro*, 2018 UT App 181, ¶ 34 (cleaned up).

¶21 With these standards in mind, we turn to the merits of Jones's appeal.[6] We first address his claims that the district court determined were procedurally barred. We then address Jones's ineffective assistance of counsel claims.

---

5. "[T]here is no statutory or constitutional right to counsel in a civil petition for post-conviction relief." *Hutchings v. State*, 2003 UT 52, ¶ 20, 84 P.3d 1150.

6. Jones does not seek post-conviction relief from his conviction for unlawful distribution of a controlled substance. Thus, our analysis focuses on Jones's murder and aggravated robbery convictions.

I. Procedurally Barred Claims

¶22    Under the Post-Conviction Remedies Act (the PCRA), a petitioner may seek relief from a criminal conviction or sentence on various grounds. *See* Utah Code Ann. § 78B-9-104 (LexisNexis 2018). The PCRA has procedural bars that prevent petitioners from seeking relief "upon any ground that . . . was raised or addressed at trial or on appeal . . . [or] could have been but was not raised at trial or on appeal." *Id.* § 78B-9-106(1)(b)–(c). But there is no procedural bar "if the failure to raise" a ground that "could have been but was not raised at trial or on appeal" was "due to ineffective assistance of counsel." *Id.* § 78B-9-106(3)(a).

¶23    In this case, the district court determined that Jones's claims of trial court error were procedurally barred. *See id.* § 78B-9-106(1)(b)–(c). Those claims include that the trial court erred in (1) denying his motion to sever his drug distribution charge from his murder or aggravated robbery charges, (2) denying what Jones described as his "motion to dismiss," (3) not granting his motion for a directed verdict, (4) not merging his murder and aggravated robbery convictions, (5) not giving the jury a special verdict form that would require jurors to make express findings on which elements of murder were met, (6) admitting into evidence alleged hearsay testimony from Mother, and (7) allegedly ignoring that the car where Brennan was discovered was "a mobile crime scene."

¶24    Jones does not take issue with the district court's application of the procedural bars to these claims. Instead, he asserts that (A) he is entitled to the application of the egregious injustice exception for his procedurally barred claims and (B) the PCRA's procedural bars are unconstitutional.

A.    Egregious Injustice Exception

¶25    Jones argues that we should apply the egregious injustice exception to the PCRA's procedural bars. Jones first raised this

argument before the district court, which rejected it. The court explained that there is "some uncertainty" over whether an egregious injustice exception exists under Utah common law. Regardless, the court determined that Jones "ha[d] not begun to meet" the requirements for the exception.

¶26    Like the district court, we recognize that the general availability of the egregious injustice exception is unsettled. *See Winward v. State*, 2012 UT 85, ¶¶ 13–14, 17, 28, 293 P.3d 259; *Gardner v. State*, 2010 UT 46, ¶¶ 92–94, 97, 234 P.3d 1115 (declining to decide whether any common law exception to the PCRA's procedural bars survived 2008 legislative amendments to the PCRA). Notwithstanding this open question, in *Winward* the Utah Supreme Court articulated "a framework for considering a petitioner's claim that he qualifies for an exception to the PCRA's procedural bars." 2012 UT 85, ¶ 17. "First, as a threshold matter, a petitioner must prove that his case presents the type of issue that would rise to the level that would warrant consideration of whether there is an exception to the PCRA's procedural bars."[7] *Id.* ¶ 18. If the petitioner meets that threshold, the petitioner must then "fully brief the particulars" of the egregious injustice exception. *Id.* Last, the petitioner "must demonstrate why the particular facts of his case qualify under the parameters of the proposed exception." *Id.* "Under this framework, the petitioner bears the heavy burden of

---

7. "To satisfy this threshold question, [the petitioner] must demonstrate that he has a reasonable justification for missing the deadline combined with a meritorious defense." *Winward v. State*, 2012 UT 85, ¶ 18, 293 P.3d 259. "To prove that his case meets the threshold test, a petitioner must persuade the court that, given the combined weight of the meritoriousness of the petitioner's claim and the justifications for raising it late, the court should consider recognizing an exception to the PCRA's procedural rules." *Id.* ¶ 20 (cleaned up).

demonstrating that his case presents . . . significant issues" that would justify considering an exception to the PCRA's procedural bars. *Id.*

¶27  We conclude that even affording Jones every reasonable consideration that he is due as a pro se litigant, *see Allen v. Friel*, 2008 UT 56, ¶ 11, 194 P.3d 903, and even assuming that the egregious injustice exception could be available to Jones, he has not satisfied his heavy burden under *Winward*. In an attempt to surmount *Winward*'s threshold requirement, Jones emphasizes that by the time of trial, this was a "cold case." But this alone does not persuade us that Jones's "case presents the type of issue that would rise to the level that would warrant consideration of whether there is an exception to the PCRA's procedural bars." *See Winward*, 2012 UT 85, ¶ 18. Jones also asserts that "ineffective trial and appellate counsel" were responsible for not properly raising issues at trial and on appeal. "But the mere allegation that counsel was ineffective" is not sufficient to overcome *Winward*'s threshold. *See id.* ¶ 21. Because Jones has not met *Winward*'s threshold, much less briefed the particulars of the exception or shown why his case qualifies "under the parameters of the proposed exception," *see id.* ¶ 18, we affirm the district court's refusal to invoke the egregious injustice exception.

B.     Constitutionality of the PCRA's Procedural Bars

¶28  Jones next contends that the PCRA's procedural bars unconstitutionally invade the judiciary's powers. In particular, he argues that the PCRA's procedural bars in Utah Code subsections 78B-9-106(1)(b), (1)(c), (2), (3), and (4) violate the Sixth and Fourteenth Amendments to the United States Constitution, violate the open courts provision of the Utah Constitution, and "encroach on the supreme court's rulemaking authority consistent with" *Brown v. Cox*, 2017 UT 3, 387 P.3d 1040.

¶29    The district court rejected Jones's constitutional challenge to the PCRA's procedural bars. It explained that the Utah Supreme Court "has already decided that Utah courts will exercise whatever authority they have over post-conviction remedies by applying the PCRA." It also quoted the Advisory Committee Notes to rule 65C of the Utah Rules of Civil Procedure, which state that "it 'is the committee's view that the added restrictions which the [PCRA] places on post-conviction petitions do not amount to a suspension of the writ of habeas corpus.'" And the district court concluded that "[b]y itself, current rule 65C(a) defeats any claim that the PCRA encroaches on the judiciary's constitutional writ power."

¶30    Although we give every reasonable indulgence to Jones due to his pro se status, *see Allen*, 2008 UT 56, ¶ 11, his constitutional argument falls short of showing why he should prevail on appeal, *see* Utah R. App. P. 24(a)(8). We do appreciate that Jones has acknowledged the district court's rationale and has cited some legal authority in support of his position. Yet his argument lacks development and "reasoned analysis based on . . . authority." *Bank of Am. v. Adamson*, 2017 UT 2, ¶ 11, 391 P.3d 196 (cleaned up). Moreover, the issue Jones raises—the constitutionality of the PCRA's procedural bars—is complex and demands a deeper analysis than Jones provides on appeal. *See Ramos v. Cobblestone Centre*, 2020 UT 55, ¶ 48 (explaining that the "mere mention of a constitutional right, phrase, or principle does not raise a constitutional claim" and that "in addition to identifying the provision allegedly infringed, a party must develop an argument as to how that provision has been violated" (cleaned up)). Thus, while we afford Jones "some leeway because he is a pro se appellant, we cannot write his appeal for him or decide his case without sufficient briefing." *See Allen*, 2008 UT 56, ¶ 17; *see also Utah Physicians for a Healthy Env't v. Executive Dir. of the Utah Dep't of Envtl. Quality*, 2016 UT 49, ¶ 27, 391 P.3d 148 ("If we were to ignore the Petitioners' error and supplement the Petitioners' inadequate brief with our own

research and arguments, we would be abandoning our proper judicial function."). As a result, we are in no position to overturn the district court's decision rejecting Jones's constitutional challenge to the PCRA's procedural bars.

¶31   For these reasons, we affirm the district court's grant of summary judgment to the State on Jones's procedurally barred claims. We now shift our attention to Jones's ineffective assistance of counsel claims.

## II. Ineffective Assistance of Counsel Claims

¶32   Jones contends that the district court erred in granting summary judgment on his claims of ineffective assistance of counsel. Although "claims relating to ineffective assistance of counsel may be procedurally barred under the PCRA," a claim in a post-conviction petition that could have been but was not raised at trial or on appeal "is not barred if the failure to raise [it] was due to ineffective assistance of counsel." *See Johnson v. State*, 2011 UT 59, ¶¶ 10–11, 267 P.3d 880 (cleaned up); *see also* Utah Code Ann. § 78B-9-106(3)(a) (LexisNexis 2018). Because Jones alleges that his claims of trial counsel's ineffectiveness were not raised on his direct appeal due to appellate counsel's ineffective assistance, his ineffective assistance claims are not procedurally barred. "To determine whether appellate counsel's failure to raise trial counsel's ineffectiveness was itself due to ineffective assistance of counsel, we must examine the merits of the claim of ineffective assistance of trial counsel." *Ross v. State*, 2012 UT 93, ¶ 25, 293 P.3d 345 (cleaned up). We examine the merits of that claim "only to the extent required to address the ineffective assistance of appellate counsel claim." *Id.* (cleaned up); *see also* Utah Code Ann. § 78B-9-106(4). If Jones is unable to establish ineffective assistance of his trial counsel, it follows that his claims of appellate counsel's ineffectiveness necessarily fail. *See, e.g., Zaragoza v. State*, 2017 UT App 215, ¶¶ 29, 36, 40, 407 P.3d 1122.

¶33    Jones "bears the burden of pleading and proving that he is entitled to relief under the PCRA." *Arriaga v. State*, 2020 UT 37, ¶ 12; *see also* Utah Code Ann. § 78B-9-105(1)(a) (LexisNexis 2018). When "the State responds to a PCRA petition by filing a motion for summary judgment," it must show "it is entitled to judgment and there is no genuine issue of material fact that would preclude summary judgment in its favor." *Arriaga*, 2020 UT 37, ¶ 12 (cleaned up). When "the burden of production falls on the nonmoving party"—here, Jones—"the moving party may carry its burden of persuasion . . . by showing that the nonmoving party has no evidence to support an essential element of a claim." *Id.* (cleaned up). Because Jones "bears the burden of proving ineffective assistance, he cannot rest on his allegations alone, particularly when the parties had an opportunity to conduct discovery." *See Menzies v. State*, 2014 UT 40, ¶ 81, 344 P.3d 581 (cleaned up). "Instead, he must set forth specific facts showing that there is a genuine issue for trial."[8] *See id.* (cleaned up).

¶34    To prevail on an ineffective assistance of counsel claim under the PCRA, Jones must meet his burden of proof on the two elements of *Strickland v. Washington*, 466 U.S. 668 (1984). *See Arriaga*, 2020 UT 37, ¶ 45. The failure to make the required showing on either element "defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700.

¶35    Under *Strickland*, Jones must first establish that his counsel rendered "deficient performance" in that "counsel's representation fell below an objective standard of

---

8. Jones complains that the district court did not hold an evidentiary hearing. But when, as here, there is no genuine issue of material fact, a court does not abuse its discretion in denying an evidentiary hearing before ruling on summary judgment. *See Menzies v. State*, 2014 UT 40, ¶ 69, 344 P.3d 581.

reasonableness." *Id.* at 687–88. "Counsel's performance, however, is not deficient if counsel refrains from making futile objections, motions, or requests." *Lucero v. State*, 2016 UT App 50, ¶ 7, 369 P.3d 469 (cleaned up).

¶36 Second, Jones must establish that "the deficient performance prejudiced the defense," which means that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687, 694. This element "requires a court to 'consider the totality of the evidence before the judge or jury' and then 'ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.'" *State v. Garcia*, 2017 UT 53, ¶ 28, 424 P.3d 171 (quoting *Strickland*, 466 U.S. at 695–96). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Rather, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011); *accord State v. Gallegos*, 2020 UT 19, ¶ 64, 463 P.3d 641. Thus, the second *Strickland* element "is a relatively high hurdle to overcome." *Garcia*, 2017 UT 53, ¶ 44. Moreover, "proof of ineffective assistance of counsel cannot be a speculative matter but must be a demonstrable reality." *Lynch v. State*, 2017 UT App 86, ¶ 67, 400 P.3d 1047 (cleaned up).

¶37 Jones's various ineffective assistance of counsel claims break down into the following categories: (A) trial counsel's allegedly insufficient pretrial investigation, (B) trial counsel's failure to make certain objections or arguments, and (C) appellate counsel's failure to raise these claims of trial counsel's ineffectiveness on direct appeal. Having set forth the relevant standards, we address each of Jones's claims below.

A.     Trial Counsel's Alleged Failure to Investigate

¶38     Jones contends that his trial counsel provided ineffective assistance by failing to conduct certain pretrial investigations, which he claims would have led to evidence helpful to his defense. Specifically, he asserts that trial counsel should have requested DNA testing on a blond hair found on the side of the car and DNA testing on Brennan's pants; should not have allowed the State to dispose of the car; should have investigated local park cameras for footage of Brennan's car; and should have investigated Yazzie, as well as other individuals mentioned in the police reports.

¶39     Even if we assume, without deciding, that trial counsel performed deficiently in these ways, we conclude that Jones has not shown prejudice resulting from counsel's deficient performance. Generally, counsel's failure "to reasonably investigate and present evidence that was crucial to the defense" is prejudicial "when [the] evidence would have affected the entire evidentiary picture." *Gregg v. State*, 2012 UT 32, ¶ 26, 279 P.3d 396 (cleaned up). "To determine the overall effect of such evidence," appellate courts "consider the totality of the evidence, taking into account such factors as whether the errors affect the entire evidentiary picture or have an isolated effect and how strongly the verdict is supported by the record." *Id.* (cleaned up).

¶40     Jones has not proffered what specific evidence further investigation would have yielded and how that evidence "would have affected the entire evidentiary picture." *See id.* (cleaned up). All he does is "rest on his allegations alone," but that is not enough to defeat summary judgment. *See Menzies v. State*, 2014 UT 40, ¶ 81, 344 P.3d 581 (cleaned up). Rather, because Jones has the burden of proving his claims of ineffective assistance of counsel, *see Arriaga v. State*, 2020 UT 37, ¶ 12, he "must set forth specific facts" showing a

reasonable likelihood of a different result had trial counsel pursued the various lines of investigation, *see Menzies*, 2014 UT 40, ¶ 81 (cleaned up). Jones has not met that burden. For example, he has not shown, or even surmised, what additional testing on the blond hair outside the car would have revealed, what park cameras (assuming they even existed) would have shown, what keeping the car would have produced, or what investigation into Yazzie would have revealed. He merely speculates that further investigation would have produced evidence favorable to the defense that in turn would have created reasonable doubt for the jury. But this speculation falls short of establishing that the likelihood a different result in this case is "substantial, not just conceivable." *See Harrington v. Richter*, 562 U.S. 86, 112 (2011); *accord State v. Gallegos*, 2020 UT 19, ¶ 64, 463 P.3d 641; *see also Lynch v. State*, 2017 UT App 86, ¶ 67, 400 P.3d 1047 ("Proof of ineffective assistance of counsel cannot be a speculative matter but must be a demonstrable reality." (cleaned up)).

¶41 Moreover, the record evidence against Jones was strong. *See Gregg*, 2012 UT 32, ¶ 26. Although Jones describes the State's case as weak and circumstantial, the State's case was far from that. There was Y-STR DNA evidence linking Jones to Brennan and the belt used to strangle her. Additionally, Jones admitted to being with Brennan on the night she was murdered, and there were inconsistencies in the story he told police. Because Jones has not shown that more investigation would have uncovered something that would have undermined the State's case or materially altered the evidentiary landscape in a manner that would have reasonably led to a more favorable result at trial, we conclude that Jones's ineffective assistance of counsel claims tied to trial counsel's pretrial investigation fail as a matter of law due to lack of prejudice.

B.    Trial Counsel's Failure to Make Certain Objections and Arguments

¶42    Jones contends that his trial counsel rendered ineffective assistance by failing (1) to properly explain the science on Y-STR DNA, (2) to argue that the investigation concerned a "mobile crime scene," (3) to object to Mother's alleged hearsay testimony, (4) to request a special verdict form, (5) to move for merger of Jones's convictions for murder and aggravated robbery, and (6) to object to consecutive sentences.

1.    Y-STR DNA Evidence

¶43    Jones contends that trial counsel did not properly address the Y-STR DNA and "failed to argue that the Y-STR [DNA] cannot conclusively identify him as the perpetrator." But he acknowledges that "arguing a statistical probability with the Y-STR DNA test . . . standing alone would not have been a worthy objection or argument."

¶44    The district court determined that this ineffectiveness claim failed as a matter of law. On deficient performance, the district court determined that dwelling further on the Y-STR DNA evidence "would not have played well for the defense" and that trial counsel "instead reasonably chose to focus on other alleged gaps in the State's forensic case," including "not testing Yazzie, not testing the blond hair sample, along with other evidence at the crime scene suggesting other suspects." We discern no error in the district court's rationale.

¶45    First, the record undermines Jones's complaint that trial counsel did not argue to the jury that the Y-STR DNA evidence failed to prove beyond a reasonable doubt that Jones was the perpetrator. Referencing the testimony of the DNA experts, trial counsel argued that "it's easier to catch someone's DNA than it is to catch their cold," and thus it would not be surprising to find Jones's DNA in Brennan's car and under her fingernails where

Jones claimed they sat in the car and shared a cigarette and a crack pipe.[9] Hence, trial counsel made the very argument Jones claims counsel did not make.

¶46 Second, trial counsel's approach to the Y-STR DNA evidence did not fall below an objective standard of reasonableness. *See State v. Ray*, 2020 UT 12, ¶ 34 ("If it appears counsel's actions could have been intended to further a reasonable strategy, a defendant has necessarily failed to show unreasonable performance."). Apart from offering the jury an explanation for how Jones's DNA may have found its way under Brennan's fingernails, it was not objectively unreasonable for trial counsel to focus on other unanswered questions. After all, the DNA evidence was damaging to Jones where only 0.4% of the male population was not excluded by the DNA testing, while other gaps in the State's investigation—including the untested blond hair and questions about Yazzie—provided trial counsel with grounds to attack the State's case and to argue for reasonable doubt.

¶47 Because Jones has not shown that trial counsel's treatment of the DNA evidence was objectively deficient, he has not established ineffective assistance in this regard.

2. Mobile Crime Scene

¶48 Jones also claims that trial counsel should have further argued that the investigation concerned a "mobile crime scene." The district court rejected this ineffective assistance claim because Jones did not show how emphasizing the "mobile crime scene" would have been "an obvious strategy" or how doing so would have helped the defense, especially when the "jury was well aware that the murder took place in [Brennan's] Honda."

---

9. On appeal, Jones states, "I'm not contesting the fact of whether or not my DNA was in the car."

Jones's arguments on appeal suffer from these same shortcomings. We thus conclude that Jones has not established either deficient performance or prejudice, and we affirm the district court's conclusion that this claim fails as a matter of law.

3.      Mother's Testimony

¶49     Jones contends that his trial counsel should have objected to Mother's testimony about the money that Brennan had in her wallet. In his view, Mother's testimony was inadmissible hearsay and the only evidence of robbery. The district court determined that this ineffective assistance claim failed as a matter of law because any objection to Mother's testimony would have been futile. The district court was correct.

¶50     Hearsay is an out-of-court statement made to prove the truth of the matter asserted.[10] Utah R. Evid. 801(c). We agree with the district court that Mother's testimony about the amount of money she believed Brennan had at the time of the murder was not hearsay; indeed, it was an in-court statement based on Mother's personal observations and was not about an out-of-court statement. As a result, trial counsel had no basis to lodge a hearsay objection and cannot be deemed ineffective for failing to object. *See Lucero v. State*, 2016 UT App 50, ¶ 7, 369 P.3d 469 (noting that counsel does not perform deficiently by "refrain[ing] from making futile objections" (cleaned up)).

---

10. Because an ineffective assistance of counsel claim "necessarily requires the court to look at the substantive issue the defendant argues his counsel should have raised, and whether the substantive issue had any merit," we look at the substantive issue only "through the lens of counsel's performance." *State v. Johnson*, 2017 UT 76, ¶ 22, 416 P.3d 443.

4.    Special Verdict Form

¶51    Jones contends that because there were three possible variants of murder presented to the jury, his trial counsel should have requested a special verdict form that would have required the jury to identify the variant of murder on which all jurors agreed. He believes that the failure led to a "patchwork verdict," resulting in the possibility that jurors were not unanimous regarding the variant of murder.

¶52    The jury was instructed on three variants of murder. Specifically, it was instructed that Jones committed murder if he caused Brennan's death

> (a) intentionally or knowingly; or
>
> (b) acting under circumstances evidencing a depraved indifference to human life, he knowingly engaged in conduct which created a grave risk of death to another and which conduct caused [Brennan's] death . . . ; or
>
> (c) engaged in the commission, attempted commission, or immediate flight from the commission or attempted commission of Robbery, and caused [Brennan's] death . . . in the course of the commission or attempted commission, or immediate flight from the commission or attempted commission of Robbery.

*See* Utah Code Ann. § 76-5-203(2)(a), (c), (d) (LexisNexis Supp. 2003). Without identifying a specific variant, the jury found Jones guilty of murder.

¶53    The district court concluded that Jones had not shown prejudice from his trial counsel's failure to request a special verdict form. In other words, the court concluded that had the

jury been given a special verdict form, there was no reasonable likelihood of a different result. *See Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984).

¶54 The district court reasoned that even if a special verdict form should have been used, "the record evidence amply supported any one of the variants" of murder. On felony murder, the court concluded that "[t]here is no . . . reasonable dispute that [Jones] murdered [Brennan] or that he committed felony murder by killing [her] during a robbery." On depraved indifference, the court explained that the mental state was "evident from [Brennan's] wounds alone"; she was "found in the back of her car, strangled to death with a belt, with a slash to her throat and defensive wounds on her hands." The court concluded that "the violent strangling and throat slashing" established "depraved indifference to human life." On intentional or knowing murder, the court noted that Brennan's "wounds alone" evidenced a knowing mental state, and the "manner of the killing supports nothing less than an intentional murder." According to the court, the intentional mental state was also corroborated by other evidence, including Brennan's lost wallet and money, Jones's "admitted association with" her, "his rare [DNA profile] under [Brennan's] fingernails and on the murder weapon," and "inconsistencies in [Jones's] accounts." Because of the ample evidence on each variant of murder presented to the jury, the district court determined that no prejudice resulted from trial counsel's failure to request a special verdict form.

¶55 Jones has not shown error in the court's decision. Far from discussing the record evidence to explain why the district court was wrong, Jones simply maintains that there is "want for evidence in this case for all elements for all offenses." But this falls short of demonstrating a reasonable likelihood that a special verdict form would have led to a different verdict. And where there was ample evidence on each variant of murder, it is

unlikely that the jury would have acquitted Jones had it been asked to agree on a single variant. *See State v. Percival*, 2020 UT App 75, ¶¶ 27, 29, 33–34, 464 P.3d 1184. As a result, we affirm the district court's ruling that this ineffective assistance claim failed as a matter of law based on lack of demonstrated prejudice.

5.    Merger

¶56    Jones contends that after the jury found him guilty, trial counsel should have moved to merge his murder and aggravated robbery convictions. He argues that the convictions would merge because robbery is a predicate offense of felony murder, which was the third variant of murder given to the jury. *See* Utah Code Ann. § 76-5-203(2)(d) (LexisNexis Supp. 2003); *see also id.* § 76-5-203(1)(s), (t) (listing robbery and aggravated robbery as a "predicate offense" for felony murder).[11] The district court concluded that any such merger motion would have been futile and that trial counsel's performance therefore did not fall below an objective standard of reasonableness. The district court was correct.

¶57    Under the merger statute, a defendant "may be convicted of an offense included in the offense charged but may not be convicted of both the offense charged and the included offense." *Id.* § 76-1-402(3) (2017). An offense is included and must be merged when it "is established by proof of the same or less than

---

11. The current version of the murder statute explicitly provides that aggravated robbery as the predicate offense to murder "constitutes a separate offense" and "does not merge with the crime of murder." Utah Code Ann. § 76-5-203(1)(t), (5) (LexisNexis 2017). The version in effect at the time of Jones's offenses, however, did not have such a provision. *See generally id.* § 76-5-203 (Supp. 2003).

all the facts required to establish the commission of the offense charged." *Id.* § 76-1-402(3)(a). The Utah Supreme Court has held that "a conviction for felony murder does not merge with its underlying predicate felony." *State v. Fedorowicz*, 2002 UT 67, ¶ 60, 52 P.3d 1194. It has also rejected merger in a case with analogous facts. In *State v. Bisner*, 2001 UT 99, 37 P.3d 1073, the defendant, like Jones, was convicted of murder and aggravated robbery and argued that the convictions should merge. *Id.* ¶¶ 1, 62. Also like Jones, the defendant there had been charged "with murder under three alternate theories," including killing the victim "intentionally or knowingly" and "that he did so while in the commission of aggravated robbery." *Id.* ¶ 64. And in light of the case law holding that such convictions do not merge and the fact that the evidence was sufficient for the jury to find that the murder was committed intentionally or knowingly, the supreme court held that the defendant's convictions did not merge. *Id.* ¶¶ 62–65.

¶58 The same circumstances exist here. Jones attempts to distinguish this precedent on two grounds. He first claims that *Bisner* did "not involve cold cases," but we fail to see the relevance of this distinction and conclude that *Bisner* applies regardless of whether this was a cold case. He next claims that *Bisner*, unlike his case, involved sufficient evidence of guilt. But we agree with the district court that the State's evidence, particularly the manner of killing, "showed nothing less than an intentional or knowing mental state." *See generally State v. Jones*, 2015 UT 19, ¶¶ 69–70, 345 P.3d 1195 (noting the three alternative theories for the murder and concluding that "the State presented sufficient evidence to allow the jury to reasonably find all required elements for the crime of murder").

¶59 Because of the authority on this subject, any motion to merge Jones's murder and aggravated robbery convictions would have been futile. Trial counsel therefore did not perform deficiently. *See Lucero v. State*, 2016 UT App 50, ¶ 7, 369 P.3d 469

(noting that counsel does not perform deficiently by "refrain[ing] from making futile objections, motions, or requests" (cleaned up)). Accordingly, as a matter of law, Jones cannot establish ineffective assistance of counsel in this regard.

6.      Consecutive Sentences

¶60    Jones next contends that his trial counsel was ineffective at the sentencing stage by failing to adequately oppose the imposition of consecutive sentences. The district court concluded that this claim failed because Jones had not shown deficient performance or prejudice. Again, we agree with the district court.

¶61    If "a defendant has been adjudged guilty of more than one felony offense," the sentencing court "shall determine . . . whether to impose concurrent or consecutive sentences for the offenses." Utah Code Ann. § 76-3-401(1) (LexisNexis 2017). "In determining whether state offenses are to run concurrently or consecutively, the court shall consider the gravity and circumstances of the offenses, the number of victims, and the history, character, and rehabilitative needs of the defendant." *Id.* § 76-3-401(2). Generally, "we presume that the district court made all the necessary considerations when making a sentencing decision." *State v. Moa*, 2012 UT 28, ¶ 35, 282 P.3d 985.

¶62    We agree with the district court that Jones has not shown that trial counsel's performance at sentencing fell below an objective standard of reasonableness. Rather, trial counsel reasonably advocated for Jones by asking for concurrent sentences and requesting that the court correct several items on the presentence investigation report. We also agree that Jones cannot show a reasonable likelihood of a different sentence. Jones has given us no reason to believe that the trial court did not consider all the relevant statutory factors and that additional argument from trial counsel had a reasonable likelihood of persuading the court that his sentences should run concurrently.

Accordingly, we affirm the district court's ruling on this claim of ineffective assistance of counsel.

C.      Appellate Counsel's Performance

¶63     Finally, Jones contends that his claims of ineffective assistance of appellate counsel do not fail as a matter of law. "The standard for evaluating whether appellate counsel is ineffective is the same *Strickland* standard used to determine whether trial counsel is ineffective." *Kell v. State*, 2008 UT 62, ¶ 42, 194 P.3d 913. And "to show that appellate counsel was ineffective in failing to raise a claim, the petitioner must show that the issue was obvious from the trial record and probably would have resulted in reversal on appeal." *Id.* (cleaned up). The district court thus determined that because Jones's trial counsel was not ineffective, "appellate counsel would have been unable to argue ineffectiveness" and Jones had shown "nothing obvious from the record that would have compelled appellate counsel to raise trial counsel's ineffectiveness or that would have likely resulted in reversal." We agree with the district court. Because Jones's trial counsel was not constitutionally ineffective in the ways Jones alleges, Jones's appellate counsel was not ineffective for failing to argue on direct appeal that trial counsel was ineffective. *See, e.g., Zaragoza v. State*, 2017 UT App 215, ¶ 40, 407 P.3d 1122.

CONCLUSION

¶64     Jones has not shown that the district court erred in granting summary judgment to the State on his claims of trial court error. Nor has he shown that the district court erred in determining that his claims of ineffective assistance of counsel failed as a matter of law. Accordingly, we affirm.

———————