2025 UT App 23

# THE UTAH COURT OF APPEALS

DANNY LEROY LOGUE,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
No. 20230054-CA
Filed February 27, 2025

Fourth District Court, Provo Department
The Honorable Derek P. Pullan
No. 190401729

Mark R. Gaylord and William Lasker,
Attorneys for Appellant

Derek E. Brown and Mark C. Field,
Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and JOHN D. LUTHY
concurred.

ORME, Judge:

¶1     In yet another "chapter in an ongoing saga," *State v. Logue* (*Logue II*), 2018 UT App 156, ¶ 1 n.1, 436 P.3d 136, *cert. denied*, 432 P.3d 1229 (Utah 2018), Danny Leroy Logue appeals the district court's dismissal of his petition brought under Utah's Post-Conviction Remedies Act (PCRA). Logue argues the court erred in determining that (1) the recantation of a witness's testimony was not "newly discovered material evidence" and (2) his claim regarding appellate counsel's failure to further investigate the witness was procedurally improper and also failed on the merits. We disagree and affirm.

BACKGROUND

¶2 After fatally shooting a suspected informant (Victim) in "an act of retaliation," Logue was convicted of aggravated murder, possession of a firearm by a restricted person, and obstruction of justice. *Logue II*, 2018 UT App 156, ¶ 1 & n.1, 436 P.3d 136, *cert. denied*, 432 P.3d 1229 (Utah 2018). "There was very little physical evidence . . . to connect Logue to Victim's death because officers were unable to recover the weapon used to kill Victim." *Id.* ¶ 7. So "most of the State's evidence came from witnesses with knowledge of Logue's involvement in the shooting." *Id.*

¶3 Logue's girlfriend (Girlfriend) testified at trial that Logue "stash[ed]" a gun at her home and that, the day before the murder, he asked her to buy bullets. A receipt entered into evidence showed a cash transaction for .32 caliber bullets—the same caliber that was found at the scene of the murder. Girlfriend testified that Logue and his accomplice, Darrell Wayne Morris, told her that "they were going to beat somebody up." She recalled meeting Logue and Morris at a gas station later that night, which security footage confirmed. She testified that the next day, Logue told her, "We killed someone last night." She also related a sequence of events in which Logue disposed of a gun, although she never saw it. And she testified that Morris's girlfriend told her that, according to Morris, Logue "drew out the gun and shot" Victim.

¶4 Morris's girlfriend testified that Morris had agreed to "beat up" Victim for a drug dealer in exchange for methamphetamine. She recalled the drug dealer driving her and Morris by Victim's house. And she testified that Morris had asked Logue to "help him." She also testified that after she saw Logue with a gun shortly before the murder, he told her "that he was going to take the gun" and that "he would be holding it" "for protection." She recalled seeing Logue leave with Morris to find Victim and later picking them up from the gas station with Girlfriend. She testified

that the next day, she saw a news report on a shooting at the house the drug dealer had shown them. And she recalled that after she asked Morris what happened, he told her, "[Logue] shot him." That day, she went with Morris to pick up the rest of the meth he was promised. And she testified that Morris had given Logue some of that meth.

¶5 Logue himself admitted to being with Morris in the area of the murder and being picked up from the gas station. Cell phone records placed Morris in the area. Logue testified that he had used methamphetamine with Morris shortly after the murder. He also testified that he traded a gun for more drugs around that same time.

¶6 Brandon Wright, who had become friendly with Logue while they were in the same prison cell block, testified that Logue had admitted to shooting Victim. *Logue v. Court of Appeals* (*Logue I*), 2016 UT 44, ¶ 2, 387 P.3d 976 (per curiam). Wright specified that Logue had told him that he "drew down and shot the guy" and admitted to pulling the trigger. Wright also asserted that he had never read any police reports or legal documents pertaining to the murder before the trial. Evidence of Wright's "lengthy criminal record, including his prior gang affiliation," was also introduced during the trial. *Id.*

¶7 Logue appealed his convictions, arguing the trial court[1] erroneously denied various motions and challenging the constitutionality of the applicable sentencing scheme. *Logue II*, 2018 UT App 156, ¶¶ 12–14, 436 P.3d 136, *cert. denied*, 432 P.3d 1229 (Utah 2018). While Logue's direct appeal was pending, Wright confessed to an unrelated, decades-old murder committed in the state of Washington. *Logue I*, 2016 UT 44, ¶ 3. After this court

---

1. We refer to the court in which Logue's trial took place as the "trial court" and the post-conviction court as the "district court." Both proceedings were conducted by the same judge.

denied Logue's subsequent motion to stay his appeal, he petitioned our Supreme Court for extraordinary relief, arguing Wright's confession cast serious doubt on the credibility of Wright's trial testimony and thereby entitled him to a new trial before the exhaustion of his direct appeal. *Id.* ¶ 4. The Court denied Logue's petition, concluding Wright's credibility would not "have been significantly affected by the additional information that he had committed an unsolved serious crime" as "the jury knew that Mr. Wright had a lengthy criminal record." *Id.* ¶ 6. In Logue's direct appeal, this court affirmed his convictions. *Logue II,* 2018 UT App 156, ¶ 29.

¶8 Wright—who has since been incarcerated in Washington—later sent a letter to the trial court requesting the contact information of both the prosecutor and Logue's trial counsel and stating, "I lied in my testimony against [Logue] on the stand and need to let both attorneys know." Receiving no response, Wright sent another letter to the court in which he stated, "I lied in my testimony against [Logue] during his 1st Degree Murder trial for which he was convicted[.]" The court issued a notice of ex parte communication, explaining it would not consider Wright's letters unless they complied with procedural rules. Wright eventually sent a letter to Logue's appellate counsel in which he admitted, "I lied to the authorities and on the stand at [Logue's] 1st Degree Murder trial in two respects." First, he stated, "[Logue] did not admit to me that he killed the victim." And second, he stated, "I read all of his case-specific legal material prior to appearing in court."

¶9 In January 2020, Logue filed a pro se PCRA petition and then an amended petition raising over forty grounds for relief, including claims regarding Wright's confession to the decades-old murder and recantation of his trial testimony, as well as several claims of ineffective assistance of trial and appellate counsel. The State moved for summary judgment on all of Logue's claims, arguing, in relevant part, that he could not show that he

was prejudiced by Wright's trial testimony as there was an abundance of evidence establishing Logue's guilt. The State also argued that Logue's ineffective assistance of appellate counsel claims failed because they were unsupported and conclusory.

¶10 Logue opposed the State's motion and filed an affidavit in which Wright admitted, "Logue never told me that he shot [Victim] or that he pulled the trigger." Wright also admitted that he had read case documents before testifying at trial. Later, and now represented by counsel, Logue submitted a memorandum in opposition to the State's motion for summary judgment. With the assistance of counsel, Logue narrowed his arguments, contending that the effect of Wright's recantation was a disputed material fact that precluded summary judgment. He also argued that appellate counsel was ineffective for failing to further investigate Wright's confession, which Logue urged would have led to an earlier recantation that Logue could have raised in his petition for extraordinary relief. As the district court later noted, some of the claims in Logue's PCRA petition were "difficult to ascertain" and the State had "put forth extraordinary effort to summarize" them in its motion for summary judgment. But the court also noted that Logue did not object "to the State's summarization" or make any "comment or objection to the State's efforts" to characterize the claims.

¶11 After argument, the district court granted summary judgment to the State. The court concluded that Wright's recantation of his trial testimony was not "newly discovered material evidence" entitling Logue to relief under the PCRA because "a reasonable jury could have found Logue guilty even without Wright's testimony." In other words, "the newly discovered evidence does not sustain the conclusion that no reasonable trier of fact could have found Logue guilty."

¶12 The court then addressed Logue's argument that his appellate counsel was ineffective for failing to investigate

Wright's murder confession, which investigation Logue urged would have led Wright to recant his incriminating testimony earlier. The court found that Logue had improperly raised this claim for the first time in his memorandum opposing summary judgment rather than in his PCRA petition. But the court addressed the merits of the claim anyway, concluding that appellate counsel had not rendered ineffective assistance in failing to investigate Wright's confession. The court concluded that appellate counsel's performance was not deficient because it was "mere speculation that further investigation about Wright's confession to an unrelated murder would have also revealed that Wright had lied about Logue's admission to killing [Victim]." The court further determined that even if this were deficient performance, "[g]iven the totality of the evidence inculpating Logue," he could not demonstrate prejudice. With no claims remaining, the court dismissed Logue's petition.

¶13   Logue appeals.


ISSUES AND STANDARDS OF REVIEW

¶14   Logue argues the district court erred in dismissing his PCRA petition on summary judgment. "We give no deference to the district court in reviewing its grant of summary judgment or its order denying a petition for post-conviction relief" and "review such rulings for correctness." *Jones v. State*, 2020 UT App 125, ¶ 18, 473 P.3d 1190. And "we will affirm the grant of summary judgment when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (quotation simplified). "In making this assessment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to . . . the nonmoving party." *Id.* (quotation simplified).

ANALYSIS

¶15 "The PCRA provides post-appeal means for challenging a prior conviction" on various grounds. *Pinder v. State*, 2015 UT 56, ¶ 21, 367 P.3d 968. Logue challenges the district court's dismissal of his claims, raising two of these grounds. First, he argues Wright's recantation was "newly discovered material evidence" that required the court to vacate his convictions. *See* Utah Code Ann. § 78B-9-104(1)(e) (LexisNexis 2022). And second, he argues appellate counsel's failure to further investigate Wright's confession to an unrelated murder constituted ineffective assistance of counsel. *See id.* § 78B-9-104(1)(d). Both claims are unavailing.

## I. Newly Discovered Material Evidence

¶16 A petitioner may seek relief under the PCRA based on the existence of "newly discovered material evidence . . . that requires the court to vacate the conviction or sentence." *Id.* § 78B-9-104(1)(e). To qualify as "newly discovered" and "material," the evidence must meet the following four requirements:

> (i) neither the petitioner nor petitioner's counsel knew of the evidence at the time of trial or sentencing or in time to include the evidence in any previously filed post-trial motion or postconviction proceeding, and the evidence could not have been discovered through the exercise of reasonable diligence;
>
> (ii) the material evidence is not merely cumulative of evidence that was known;
>
> (iii) the material evidence is not merely impeachment evidence; and

(iv) viewed with all the other evidence, the newly discovered material evidence demonstrates that no reasonable trier of fact could have found the petitioner guilty of the offense or subject to the sentence received[.]

*Id.* § 78B-9-104(1)(e)(i)–(iv).

¶17    Logue argues the district court erred in concluding that "a reasonable jury could have found [him] guilty even without Wright's testimony" and thus "the newly discovered evidence" of Wright's recantation "does not sustain the conclusion that no reasonable trier of fact could have found Logue guilty."[2]

¶18    The district court reached this conclusion following our Supreme Court's lead in *Pinder v. State*, 2015 UT 56, 367 P.3d 968, wherein the Court held that "evidence is . . . 'merely impeachment' evidence if it is insufficient to sustain the conclusion that 'no reasonable trier of fact could have found the petitioner guilty.'" *Id.* ¶ 33 (quoting the version of Utah Code Ann. § 78B-9-104(1)(e)(iii)–(iv) then in effect). This holding appears to blur the requirements of subsections 78B-9-104(1)(e)(ii), (iii), and (iv), rather than considering them

---

2. Logue also suggests that Wright's recantation poses due process problems. And he challenges the constitutionality of the PCRA itself. Our preservation rule requires issues to be "presented to the district court in such a way that the court has an opportunity to rule on" them. *Winward v. State*, 2012 UT 85, ¶ 9, 293 P.3d 259 (quotation simplified). But Logue did not raise these issues below and so the district court did not address them. Nor does he urge us to review them under a preservation exception. Accordingly, we do not address these claims further. *See id.* ("If an argument is unpreserved, we will not address it for the first time on appeal unless the party can prove either plain error or exceptional circumstances.").

separately as the statute contemplates. But here, whether considered under subsection (ii), (iii), or (iv), we readily agree that Logue has not demonstrated that Wright's recantation, "when viewed with all the other evidence," would have such great effect that "no reasonable trier of fact could have found [Logue] guilty." *See Mulder v. State*, 2016 UT App 207, ¶ 18, 385 P.3d 708 (quotation simplified), *cert. denied*, 393 P.3d 285 (Utah 2017).

¶19 Evidence showed Logue and Morris agreed to "beat up" Victim in exchange for meth. Logue stored a gun at Girlfriend's house and instructed her to buy bullets the day before the murder. After Morris's girlfriend saw Logue with a gun, he told her he would have it when he encountered Victim. Logue admitted to being with Morris at the time of the murder, and cell phone records place Morris near the scene of the crime around the time of the murder. Both Logue and Morris told others that they had killed Victim—with Morris implicating Logue as the shooter. And there was evidence that Logue disposed of a gun shortly after the murder. In our previous opinion on Logue's direct appeal, we concluded there was sufficient evidence to convict him of aggravated murder. Significantly, we did so without any reference whatsoever to Wright's trial testimony. *See Logue II*, 2018 UT App 156, ¶ 21, 436 P.3d 136, *cert. denied*, 432 P.3d 1229 (Utah 2018). In other words, we saw sufficient evidence to support the conviction totally aside from Wright's testimony.[3] This evidence is also sufficient for a reasonable trier of fact to conclude that Logue was guilty of the possession offense and obstruction of justice. *See* Utah Code Ann. § 76-10-503(2)(a) (LexisNexis 2011) (possession of a firearm by a restricted person); *id.* § 76-8-306(1)

_____

3. At the time of Logue's direct appeal, we were aware only that Wright had confessed to an unrelated murder—not that he had recanted his testimony. We concluded there was sufficient evidence to convict Logue without any mention of Wright's testimony whatsoever, so even had we been aware of the recantation, this distinction would not have changed our calculus.

(obstruction of justice). Thus, in light of this other evidence, Wright's recantation was unlikely to have changed the outcome of Logue's trial. Accordingly, the district court correctly concluded the recantation was not "newly discovered material evidence" warranting relief under the PCRA.[4]

## II. Ineffective Assistance of Appellate Counsel

¶20 The PCRA also provides for relief from a conviction where "the petitioner had ineffective assistance of counsel in violation of the United States Constitution or Utah Constitution." Utah Code Ann. § 78B-9-104(1)(d) (LexisNexis 2022). Logue argued in his opposition to the State's motion for summary judgment that had his appellate counsel investigated Wright's confession to the

---

4. Logue also argues the district court denied him an evidentiary hearing to determine the effect of Wright's recantation and, thus, there remained a disputed material fact precluding summary judgment. But here, viewing the facts in the light most favorable to Logue as the nonmoving party, the district court assumed Wright's recantation was credible, negating the need for a hearing. The effect of that recantation—i.e., whether it would have changed the outcome of the trial—was a question of law, not one of fact that would have precluded summary judgment. These claims thus fail.

Logue additionally contends that he would not have testified in his own defense but for Wright's testifying for the State. He has failed to carry his burden of persuasion on this point. *See Pinder v. State*, 2015 UT 56, ¶ 36, 367 P.3d 968 ("The mere possibility that new evidence might have helped the defense or might have affected the outcome is insufficient to merit relief under the PCRA.") (quotation simplified). And as *Logue II*, 2018 UT App 156, 436 P.3d 136, *cert. denied*, 432 P.3d 1229 (Utah 2018), makes clear, Logue had much adverse testimony to refute separate and apart from Wright's testimony, which was not even referenced in that opinion. *See id.* ¶ 21.

Washington murder, Wright would have been prompted to recant his trial testimony earlier, which would have strengthened Logue's petition for extraordinary relief that our Supreme Court considered in *Logue I*, 2016 UT 44, 387 P.3d 976 (per curiam). The district court dismissed Logue's ineffective assistance claim, concluding that raising it for the first time in his opposition to the State's motion for summary judgment rather than in his PCRA petition was improper. Although it dismissed the claim on this basis, the court also determined that the claim failed on the merits. Logue challenges both conclusions.

¶21 "To prevail on an ineffective assistance of counsel claim under the PCRA," Logue "must meet his burden of proof on the two elements of *Strickland v. Washington*, 466 U.S. 668 (1984)." *Jones v. State*, 2020 UT App 125, ¶ 34, 473 P.3d 1190. "Under *Strickland*, [Logue] must first establish that his counsel rendered deficient performance in that counsel's representation fell below an objective standard of reasonableness." *Id.* ¶ 35 (quotation simplified). "Second, [he] must establish that the deficient performance prejudiced the defense, which means that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* ¶ 36 (quotation simplified).

¶22 We are not persuaded that appellate counsel's failure to investigate Wright's confession constituted deficient performance. Logue asserts that "the need for such investigation was glaringly obvious from the trial record." But it hardly seems obvious that counsel would need to investigate Wright's confession to an unrelated, decades-old murder in Washington when the record was already replete with Wright's extensive criminal history. And whether this investigation would have prompted Wright to also admit to perjury and recant his testimony at that time is entirely speculative. "Proof of ineffective assistance of counsel cannot be a speculative matter but must be a demonstrable reality." *Id.* (quotation simplified).

¶23 In any event, the district court dismissed this ineffective assistance claim, citing *Lafferty v. State*, 2007 UT 73, 175 P.3d 530, *overruled on other grounds by McCloud v. State*, 2021 UT 51, 496 P.3d 179, in which our Supreme Court recognized that "[r]aising an issue for the first time in a memorandum opposing summary judgment without showing good cause violates the pleading requirements for post-conviction petitions." *Id.* ¶ 23. *See also Fuja v. Woodland Hills*, 2022 UT App 140, ¶ 18, 523 P.3d 203 ("Where a claim is absent from the initial pleadings and appears for the first time in response to a summary judgment motion, we do not consider it."); *Jensen v. Skypark Landowners Ass'n*, 2013 UT App 48, ¶ 4, 299 P.3d 609 ("The trial court correctly declined to consider claims raised for the first time in response to a summary judgment motion."), *cert. denied*, 308 P.3d 536 (Utah 2013). Although he urges otherwise, Logue raised this ineffective assistance claim against appellate counsel for the first time in his opposition to the State's motion for summary judgment, and he made no attempt to justify this tardiness. Doing so violated the pleading requirements for PCRA petitions under the Utah Rules of Civil Procedure, *see Lafferty*, 2007 UT 73, ¶ 23, and we affirm the district court's dismissal of the claim.

## CONCLUSION

¶24 The district court correctly concluded that Wright's recantation was not "newly discovered material evidence" warranting relief under the PCRA as the applicable provision has been interpreted. The court also correctly concluded that Logue's ineffective assistance claim against appellate counsel was improperly raised for the first time in his opposition to the State's motion for summary judgment. Accordingly, we see no error in the court's dismissal of these claims. We thus affirm the grant of summary judgment to the State on Logue's PCRA petition.

———————